

ORIGINAL

# 15 MAG 847

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

**15 CRIM. MISC.    PAGE 2 0**

IN THE MATTER OF        )
                        )
THE EXTRADITION OF      )        Misc. No. _____
                        )
ALEXANDER KHOCHINSKY    )

U.S. DISTRICT COURT
FILED
FEB 25 2015
S.D. OF N.Y.

#1

COMPLAINT
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on

information and belief that the following is true and correct:

1.      In this matter I act for and on behalf of the Government of Poland.

2.      There is an extradition treaty in force between the United States and Poland, known as

the 1996 U.S.-Poland Extradition Treaty.

3.      Pursuant to the treaty, the Government of Poland has submitted a formal request through

diplomatic channels for the extradition of ALEXANDER KHOCHINSKY ("KHOCHINSKY").

4.      KHOCHINSKY is charged with purchasing or helping to sell or accepting or helping to

conceal a thing that has been gained through a prohibited act, in violation of Article 291,

Paragraph 1 and Article 294, Paragraphs 1 and 2 of the Criminal Code of the Republic of Poland,

and in connection with Article 11, Paragraph 2 of the Criminal Code of the Republic of Poland.

The charged conduct was committed within the jurisdiction of the requesting state, and a

decision for the arrest of KHOCHINSKY was issued by Judge Marta Zaidlewicz of the Regional

Court at Poznań, Poland on or about November 21, 2012.  A copy of the decision for arrest,

translated into English, is attached as Exhibit 1 to this Complaint and is incorporated herein by

reference.  On the basis of the decision for arrest, a Wanted Person Notice for KHOCHINSKY

was issued in the Republic of Poland. A copy of the Wanted Person Notice, translated into English, is attached as Exhibit 2 to this Complaint and is incorporated herein by reference.

5.      The decision for the arrest of KHOCHINSKY was issued on the basis of the following facts, which were obtained by authorities in the Republic of Poland:

a.  At some point prior to in or about early 2010, KHOCHINSKY acquired the painting entitled "Girl with a Dove," painted by Antione Pesne in 1754.

b.  "Girl with a Dove" is catalogued in the Book of Acquisitions of the Greater Poland Museum in Poznań under inventory number 60/1931 and number 233 of the Kaiser Friedrich-Museum Posen. "Girl with a Dove" was taken by the German Third Reich in 1943 and found by the Russian Army in 1945, whereupon it was removed to a repository of the former Union of Soviet Socialist Republics (U.S.S.R.). "Girl with a Dove" was registered on sheet number 5983 of the database of cultural items lost in World War II by the Polish Ministry of Culture and National Heritage and placed in the Interpol list of Stolen Works of Art, reference number 2010/50630-1.1.

c.  In or about early 2010, KHOCHINSKY contacted the Polish Embassy in Moscow, Russia and stated, in sum and substance, that he was in possession of "Girl with a Dove" and was offering its sale to Poland. KHOCHINSKY told Polish authorities, in sum and substance, that the painting was owned by his mother's family and brought to what is now Tashkent, Uzbekistan during World War II by his father.

d.  The authenticity of the painting KHOCHINSKY claimed was "Girl with a Dove" was confirmed in Moscow on or about July 22, 2010 by Maciej Piotr Michalowski, an employee of the National Museum in Poznań, and an official restitution request was issued by Poland to KHOCHINSKY on or about February 28, 2011 which he ignored.

e. On or about May 18, 2010, KHOCHINSKY sent a photograph of himself with "Girl with a Dove" by e-mail to the Polish Embassy in Moscow, Russia. A copy of that photograph is attached as Exhibit 3 to this Complaint.

f. KHOCHINSKY owns and operates an antique store in Moscow called "Bohema." In or about June 2012, at the request of the Polish government, Russian authorities searched "Bohema," but did not locate "Girl with a Dove." In the course of that search, a witness, Yelizaveta Tariova, confirmed that "Girl with a Dove" had been in the showroom at "Bohema" for a short time, had been shown to an expert from Poland, and was subsequently removed by representatives of KHOCHINSKY.

g. The location of "Girl with a Dove" is currently unknown.

6. It is believed that KHOCHINSKY may currently be found within the Southern District of New York at 70 Little West Street, Apartment 29D, in New York, New York.

7. Elizabeth M.M. O'Connor, an attorney in the Office of the Legal Adviser of the United States Department of State, has provided the United States Department of Justice with a declaration (the "O'Connor Declaration"): (1) authenticating a copy of the diplomatic note by which the request for extradition was made by the Republic of Poland and a copy of the extradition treaty between the United States and the Republic of Poland; (2) stating that the offense for which extradition is demanded is covered by that treaty; and (3) confirming that the documents supporting the request for extradition are properly certified by the principal American diplomatic or consular officer in Poland, in accordance with Title 18, United States Code, Section 3190, so as to enable them to be received in evidence. The O'Connor Declaration and the accompanying attachments, including a copy of the diplomatic note from the requesting state, a copy of the relevant extradition treaty, and the certified documents submitted in support of the

request are attached as Exhibit 4 to this Complaint and are incorporated herein by reference.

9.     KHOCHINSKY would be likely to flee if he learned of the existence of a warrant for his

arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of ALEXANDER

KHOCHINSKY be issued in accordance with Title 18, United States Code, Section 3184, and

the Extradition Treaty between the United States and the Republic of Poland, and that this

complaint and the warrant be placed under the seal of the court, except as disclosure is needed

for its execution, until such time as the warrant is executed.


Katherine C. Reilly
ASSISTANT UNITED STATES ATTORNEY


Sworn to before me and subscribed in my presence this
25 day of February, 2015, at New York, New York.

FEB 25 2015

THE HONORABLE KEVIN N. FOX
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1

File reference number III Kp 671/12 (V Ds. 85/12)

## DECISION

Date November 21, 2012

The Regional Court Poznań - Stare Miasto in Poznań in III Criminal Department in the following constitution:

Presiding Judge: Judge of the Regional Court Marta Zaidlewicz

having considered in the case against: **Alexander Khochinskiy,**

**suspected of the following:**

before May 18, 2010 at an undisclosed location, knowing that a thing had been obtained by means of a prohibited act, he acquired a painting by Antoine Pesne „Girl with a Dove" of 1754, cataloged in th Book of Acquisitions of the Greater Poland (Wielkopolskie) Museum in Poznań under the inventory number 60/1931, ad subsequently number 233 of the Kaiser Friedrich - Museum Posen, lost in 1943 as a result of looting of property by the then authorities of the III German Reich, found by the Red Army in 1945 and along with another collection of the museum moved to the repositories of the former Union of Soviet Socialist Republics, registered on sheet number 5983 of the database of goods of culture lost as a result of World War II of the Ministry of Culture and National Heritage and placed on the Interpol list in the Stolen Works of Art database under the reference 2010/50630-1.1, constituting good of particular importance to culture, and at the same time property of considerable value exceeding PLN 200 000 to the detriment of the Wielkopolskie Museum, currently the National Museum in Poznań,

**that is an offense under article 291 paragraph 1 of the Criminal Code in connection with article 294 paragraph 1 and 2 of the Criminal Code in connection with article 11 paragraph 2 of the Criminal Code.**

of prosecutor's request in the matter of application of provisional arrest, by virtue of article 249 paragraph 1 of the Code of Criminal Procedure and article 258 paragraph 1 point 1 of the Code of Criminal Procedure

### decides:

to apply with respect to Alexander Khochinskiy, son of Yakov, born on February 18, 1951 in Leningrad, recently domiciled in Moscow, Lichebnaya 5 apartment 31, issued with identity card of citizen of the Russian Federation of series 4509 number 683880, a preventive measure in the form of provisional arrest for a period of 14 (fourteen) days from the date of apprehension.

*Oblong stamp:*
For conformity
2013-01-25
*/-/ illegible signature*
Magdalena Badyna

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ"

File reference number III Kp 671/12
(V Ds. 85/12)

## Statement of Reasons

The evidence gathered in the case and in the first place testimonies of witness Maciej Michałowski, who confirmed authenticity of the painting „Girl with a Dove" and Yelizaveta Tairova, employee of the Bohema gallery, as well as evidence collected in the case in the form of documents, obtained within the framework of foreign legal assistance, indicate high likelihood that the suspect did perpetrate the alleged offense.

In the opinion of the Court, in view of such collected evidence, securing of proper course of criminal proceedings is possible only by means of application of an isolating preventive measure in the form of provisional arrest.

For as follows from the files of the case, there is high likelihood that the suspect unlawfully acquired the painting „Girl with a Dove", and currently is willfully concealing the painting without intending to return it to the rightful owner. The suspect knew about the loss of the painting by the Polish state, which he expressed in his email correspondence with the Polish Embassy in Moscow, yet still purchased it unlawfully (his claims that he purchased it at a foreign auction are unlikely, for the painting is listed as lost in looting during World War II). From the testimonies of witness Yelizaveta Tairova it follows that the painting was present at the Bohema antique shop, owned by the suspect, for a very brief period, and was then taken away (immediately after its authenticity was confirmed by Maciej Michałowski). From the materials gathered in the case it follows that Alexander Khochinskiy is currently staying in the United States of America; it is also highly likely that he is traveling European countries in connection with his art-collecting and art-dealing activity.

In the assessment of this Court, apprehension of the suspect and his participation in procedural actions can be ensured only by an isolating preventive measure. This is supported in the first place by persistent absconding of the suspect from Polish and foreign law enforcement authorities.

In view of the above, the Court decided as in the ruling.

JRC Marta Zaidlewicz

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim* "DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ".

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "REGIONAL COURT POZNAŃ – STARE MIASTO IN POZNAŃ".

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "MINISTER OF JUSTICE".

*Oblong stamp:*
I certify conformity of the extract with the original
Poznań, 09 JAN 2013
Manager
Katarzyna Dańszczan

*Oblong stamp:*
For conformity
25.01.2013
*/-/ illegible signature*
Magdalena Badyna

# EXHIBIT 2



DISTRICT PROSECUTOR'S OFFICE IN
POZNAŃ
**5ᵀᴴ INVESTIGATIVE
DEPARTMENT**
Solna 10
61-736 POZNAŃ

VDs. 85/12                                          Poznań 2013-01-25

**City Police Headquarters
in Poznań**

## WANTED PERSON NOTICE

Prosecutor of the District Prosecutor's Office in Poznań Krzysztof Burdziński,

pursuant to his decision of January 25, 2013 issued by virtue of **art. 279 § 1 of the Code of Criminal Procedure in the case V Ds. 85/12,**

I. orders a search under a **wanted person notice** for the following suspect:

1. Surname and given names - **Alexander Khochinskiy**

2. Alias - no data

3. Father's name - Yakov
   Name and maiden surname of mother - **no data**

4. Date and place of birth - **February 18, 1951 Leningrad**

   Registry number PESEL - no data

5. Last place of registration - **Moscow, Lichebnaya 5/31, Russian Federation**

6. Last place of residence - **as above**

7. Last place of work - **„BOHEMA" Gallery, Moscow, Smoleńska 12**

8. Occupation: **no data**

9. citizenship - **Russian**

10. Gender - **male**

.11. Description: **no data**

12. Information on the contents of pressed charges:

before May 18, 2010 at an undisclosed location, knowing that a thing had been obtained by means of a prohibited act, he acquired a painting by Antoine Pesne – „Girl with a Dove" of 1754, cataloged in th Book of Acquisitions of the Greater Poland (Wielkopolskie) Museum in Poznań under the inventory number 60/1931, ad subsequently number 233 of the Kaiser

12

Friedrich - Museum Posen, lost in 1943 as a result of looting of property by the then authorities of the III German Reich, found by the Red Army in 1945 and along with another collection of the museum moved to the repositories of the former Union of Soviet Socialist Republics, registered on sheet number 5983 of the database of goods of culture lost as a result of World War II of the Ministry of Culture and National Heritage and placed on the Interpol list in the Stolen Works of Art database under the reference 2010/50630-1.1, constituting good of particular importance to culture, and at the same time property of considerable value exceeding PLN 200 000 to the detriment of the Wielkopolskie Museum, currently the National Museum in Poznań,

**that is an offense under article 291 paragraph 1 of the Criminal Code in connection with article 294 paragraph 1 and 2 of the Criminal Code in connection with article 11 paragraph 2 of the Criminal Code.**

**13.** Date and reference of decision on provisional arrest - **November 21, 2012 - III Kp 671/12 of the Regional Court Poznań Stare Miasto in Poznań**

II.   Distribution of the all-points bulletin shall take place by sending out to Police units and:
- publication of the wanted person notice data on the Internet

III.   Photograph of the fugitive - **attached**

All those who know the whereabouts of the fugitive are called on to notify the same to the nearest Police unit or prosecutor (article 280 paragraph 1 point 4 of the Code of Criminal Procedure). /.

Warning is given that harboring the fugitive or aiding her in absconding carries a penalty of imprisonment of up to 5 years (article 239 paragraph 1 of the Criminal Code).

A reward for apprehension or contribution to apprehension of the fugitive was put up in the amount of - no reward put up presently,

Assurance is provided on maintenance of secrecy as to the identity of the informing person (art. 280 paragraph 2 of the Code of Criminal Procedure).

**Prosecutor of the District Prosecutor's Office**
*/-/ illegible signature*
**Krzysztof Burdziński**

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ".

Enclosures:
1.   Extract of decision on provisional arrest
2.   Order of receipt in the nearest investigative detention facility

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim* "MINISTER OF JUSTICE".

13

*Oblong stamp:*
DISTRICT PROSFCUTOR'S OFFICE
IN POZNAŃ
III Department of Supervision
over Preliminary Proceedings
61-736 Poznań, ul. Solna 10

**Excerpt from the Act of June 6th, 1997 – The Criminal Code**
**(Journal of Laws of August 2nd 1997, No. 88, item 553 with subsequent amendments)**
**containing regulations applicable in the case:**

### Article 291 paragraph 1 of Criminal Code

Any person who purchases or helps to sell or accepts or helps to conceal a thing that has been gained through a prohibited act is liable to a penalty of imprisonment not shorter than 3 months and not longer than 5 years.

### Article 294 of Criminal Code
**Paragraph 1**

Any person who commits the crime referred to in article 291 paragraph 1 against property of substantial value, is liable to a penalty of imprisonment for a period from one year up to 10 years

**Paragraph 2.**

A perpetrator who commits the crime referred to in § 1 above against a property of particular importance for culture shall be liable to the same penalty as above.

### Article 115 paragraph 5 of Criminal Code

Property of considerable value is property whose value at the time of perpetration of a prohibited act exceeds two-hundred-fold value of the lowest monthly remuneration.

### Article 11 of Criminal Code
**Paragraph 1**

The same act can only constitute one crime.

**Paragraph 2.**

If a prohibited act exhausts the attributes determined in two or more regulations of the penal law, then the court shall sentence for one prohibited act on the basis of all the concurring regulations.

**Paragraph 3**

In the case defined in paragraph 2 above, the court shall impose a penalty on the basis of a regulation which provides for the strictest penalty, which shall not be an impediment to imposing additional penalties and security means as provided by the law on the basis of other concurring regulations.

14

### Article 101 paragraph 1 of Criminal Code

An offence will cease to be punishable upon the expiration of the following periods from the time of its perpetration:

1) 30 years – if the deed is a crime of homicide;
2) 20 years – if the deed is another crime;
2a) 15 years – if the deed is the crime liable to imprisonment exceeding 5 years;
3) 10 years – if the deed is the crime liable to imprisonment exceeding 3 years;
4) 5 years - in case of other offences;

### paragraph 3

In cases provided for in paragraph 1 or 2 above, if perpetration of a crime depends on the occurrence of a consequence indicated in the law, then the limitation period is calculated starting with the date of the occurrence of such a consequence.

### Article 102 of Criminal Code

If proceedings against a person have been commenced within a period provided for by article 101 points 1-3 above, then the crime or offence committed by such person will cease to be punishable on expiry of 10 years, and in other cases on expiry of 5 years after the end of such a period.

> *Oblong stamp:*
>
> For conformity
>
> *Oblong stamp:*
>
> Senior clerk
> 11.06.2013
> Anna Kokocińska
> */-/ illegible signature*
> Signature

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "MINISTER OF JUSTICE".

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ".

*Repertory No. 833/2013*
*I, the undersigned, Ryszard Pruszkowski, sworn translator of the English language entered on the list of sworn translators of the Minister of Justice hereby certify that the above text is a true and complete translation of the original Polish document.*
*Warsaw, June 24, 2013*

# EXHIBIT 3



# EXHIBIT 4



DISTRICT OF COLUMBIA, ss:

## DECLARATION OF ELIZABETH M.M. O'CONNOR

I, Elizabeth M.M. O'Connor, declare and say as follows:

1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, DC. This office has responsibility for extradition requests, and I am charged with the extradition case of Aleksander Choczynski a.k.a. Alexander Khochinskiy. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. In accordance with the provisions of the extradition treaty in full force and effect between the United States and Poland, the Embassy of Poland has submitted Diplomatic Note No. 35-15-2013, dated July 1, 2013, formally requesting the extradition of Aleksander Choczynski a.k.a. Alexander Khochinskiy, and the Ministry of Justice of Poland has submitted additional information to the United Stated Department of Justice, dated November 3, 2014 and January 14, 2015. Copies of the diplomatic note and letters are attached to this declaration.

3. The relevant and applicable treaty provisions in full force and effect between the United States and Poland are found in the Extradition Treaty between the United States of America and the Republic of Poland signed 10 July 1996, and the Agreement between the United States of America and the Republic of Poland on the application of the Extradition Treaty between the United States of America and the Republic of Poland signed 10 July 1996, pursuant to Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003 (the "Agreement"), with Annex, signed June 9, 2006. The Annex to the Agreement (the "Annex") reflects the integrated text of the

15017058-2

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

...hat Elizabeth M.M. O'Connor, whose name is subscribed to the document hereunto
a..........d.....at the time of subscribing the same Attorney Adviser, Office of the Legal Adviser,
D....me.....State, United States of America, and that full faith and credit are due to her acts as
su...

*T.......tificate is not valid if it is removed or altered in any way whatsoever*

In testimony whereof, I, John F. Kerry, Secretary of State , have
hereunto caused the seal of the Department of State to be affixed and
my name subscribed by the Assistant Authentication Officer, of the
said Department, at the city of Washington, in the District of
Columbia, this thirtieth day of January, 2015.

*Issued pu........to CHXIV, Stat*
*Sept. ·15,........1 Stat. 68-69;*
*USC 2657........SC 2651a; 5 U.*
*301; 28 U.......33 et. seq.; 8 US*
*1443(f); R........4 Federal Rules*
*Civil Proc....*

Secretary of State

By _____

Assistant Authentication Officer,
Department of State

provisions of the 1996 U.S.-Poland Extradition Treaty and the U.S.-EU Extradition Agreement. A copy of the Agreement and Annex are attached to this declaration.

4. In accordance with Article 22 of the Annex, the Government of the United States of America provides legal representation in U.S. courts for the Government of Poland for its extradition requests, and the Government of Poland provides legal representation in its courts for extradition requests made by the United States.

5. The offense for which extradition is sought is covered under Article 2 of the Annex.

6. Under Article 10 of the Annex, documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State are admissible in extradition proceedings without further certification, authentication or other legalization. Therefore, such documents satisfy the authentication requirements without the need for certification by the U.S. Embassy in Warsaw. Poland, in submitting all documents in the instant case that bear the certificate or seal of the Ministry of Justice, has complied with the Annex with respect to authentication.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on January 29, 2015.

Elizabeth M. M. O'Connor
ELIZABETH M.M. O'CONNOR

Attachments:
1. Copy of Note and Letters
2. Copy of Agreement with Annex

2013 ... 11

No 35-15-2013

The Embassy of the Republic of Poland presents its compliments to the United States Department of State and in accordance with the Treaty of Extradition between the Republic of Poland and the United States of America has the honor to request the extradition of Aleksander Choczyński a.k.a. Alexander Khochinskiy, born on February 18, 1951 in Leningrad, Russian Federation. He is suspected of the crime of fencing committed in Russia. .

The offense Aleksander Choczyński a.k.a. Alexander Khochinskiy is suspected of corresponds with article 2 of the Treaty of Extradition between the Republic of Poland and the United States of America.

The Minister of Justice of the Republic of Poland issued the extradition request.

The Embassy of the Republic of Poland avails itself of this opportunity to renew to the United States Department of State the assurances of its highest consideration. $\mathcal{U}_1$ .

Enclosures: Documents supporting the extradition request.

U.S. Department of State

W a s h i n g t o n, D. C.



Washington, DC, July 01, 2013



MB/AH

MINISTERSTWO SPRAWIEDLIWOŚCI
Departament Współpracy Międzynarodowej
i Praw Człowieka
00 - 950 Warszawa, Al. Ujazdowskie 11
Tel/fax: (+ 48 22) 6280949

Warszawa, November 3, 2014

DWMPC II 073 - 251 / 13 / 14
PG V Oz ₁ 931 ГТ3
Please quote our ref. when responding
UNP: 1u1103 - 00237

U.S. Department of Justice
Criminal Division
Office of International Affairs
1301 New York Avenue NW
Washington, DC 20530

Extradition Treaty between the Republic of Poland and the United States of America signed
In Washington on July 10, 1996.
Extradition of a Russian citizen Alexander KHOCHINSKY from the USA to Poland
Your reference 95-100 - 22981

Dear Ms. Warlow,

With reference to the request of the District Public Prosecutor's Office in Poznan for extradition from the United
States of a Russian citizen Alexander KHOCHINSKY and your letter of August 8, 2013 related to this request,
the Ministry of Justice of the Republic of Poland - acting as an executive authority pursuant to Article 25 of the
Treaty - kindly sends enclosed the additional documents prepared by the requesting authority, which were
requested in your aforementioned letter. The documents have been duly authorised by the Polish Ministry of
Justice according to the aforementioned Extradition Treaty.

Sincerely yours,

Head of Division
H/z C Co L-1 ·
Katarzyna Biernacka

Cc:
General Prosecutor's Office
Department of International Cooperation
Ref. PG V Oz₁ 931/13

95-100-22981

Certified translation from the Polish language



DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ
**DEPARTMENT III**
**SUPERVISION OF PRELIMINARY**
**PROCEEDINGS**
Solna 10
61-736 POZNAŃ
Tel. +48 618852022 Fax +48 618852026
e-mail: oz@poznan.po.gov.pl
a.skrzypczak@poznan.po.gov.pl

III Oz 341/13

Poznań, October 16, 2014

### SUPPLEMENTARY INFORMATION TO A REQUEST
### FOR PROVISIONAL ARREST AND EXTRADITION

In response to the electronic message of the U.S. Department of Justice of September 26, 2014 in the matter of the request for provisional arrest and extradition of Alexander Khochinsky, please be kindly advised that on October 12, 2013 in relation to the above-mentioned a decision was issued to present charges of perpetration of an offense under Article 291 section 1 of the Criminal Code in connection with Article 294 section 1 and 2 of the Criminal Code in connection with Article 11 section 2 of the Criminal Code, consisting in acquisition before May 18, 2010 at an undetermined place of a painting by Antoine Pesne "Girl with a Dove", despite being aware of the fact that the painting originated from a prohibited act - looting of property in 1943 by the then authorities of the German Third Reich.

Pursuant to Article 101 section 1 (2a) of the Criminal Code, prosecution of this offense becomes limited by prescription after the lapse of 15 years from the time of its perpetration. however, by virtue of Article 102 of the Criminal Code, in view of presentation of charges to Alexander Khochinsky, the period of limitation of prosecution is extended by another 10 years. Therefore prosecution of the offense alleged to Alexander Khochinsky becomes limited on May 18, 2035.

**Deputy District Prosecutor**
*/-/ illegible signature*
**Roman Szymanowski**

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ".

*Repertory No. 1078/2014*
*I, the undersigned, Ryszard Pruszkowski, sworn translator of the English language entered on the list of sworn translators of the Minister of Justice hereby certify that the above text is a true and complete translation of the original Polish document.*
*Warsaw, October 23, 2014*

MB/DH



MINISTERSTWO SPRAWIEDLIWOŚCI
Departament Współpracy Międzynarodowej
I Praw Człowieka
00 - 950 Warszawa, Al. Ujazdowskie 11
Tel/fax: (+ 48 22) 6280949

Warszawa, January 14, 2015

DWMPC II 073 - 251 / 13 / 17
PG V Oz ₁ 931 / 13
Please quote our ref. when responding
UNP : 150114 - 00897

U.S. Department of Justice
Criminal Division
Office of International Affairs
1301 New York Avenue NW
Washington, DC 20530

Extradition Treaty between the Republic of Poland and the United States of America signed
In Washington on July 10, 1996.
Extradition of a Russian citizen Alexander KHOCHINSKY from the USA to Poland
Your reference 95-100 - 22981

Dear Ms. Rodriguez,

With reference to the request of the District Public Prosecutor's Office in Poznan for extradition from the United
States of a Russian citizen Alexander KHOCHINSKY and e-mail of January 6, 2015 related to this request, the
Ministry of Justice of the Republic of Poland - acting as an executive authority pursuant to Article 25 of the
Treaty - kindly sends enclosed the additional documents prepared by the requesting authority, which were
requested in your aforementioned letter. The documents have been duly authorised by the Polish Ministry of
Justice according to the aforementioned Extradition Treaty.

Sincerely yours,

Head of Division
Katarzyna Biernacka

Cc:
General Prosecutor's Office
Department of International Cooperation
Ref. PG V Oz₁ 931/13

CRIMINAL DIVISION   2015 JAN 21   AM 10: 54

95-100-22981

Case 1:15-mj-00847-JSR   Document 1   Filed 02/25/15   Page 24 of 68



PROKURATURA OKRĘGOWA W POZNANIU
**WYDZIAŁ III**
NADZORU NAD POSTĘPOWANIEM PRZYGOTOWAWCZYM
ul. Solna 10
61-736 POZNAŃ
Tel. +48 618852022   Fax. +48 618852026
e-mail:   oz@poznan.po.gov.pl    a.skrzypczak@poznan.po.gov.pl

III Oz 341/13                                  Poznań, dnia 1   października  2013 roku

Dot. 95-100-22981

Informacja uzupełniająca do wniosku o tymczasowe aresztowanie i
ekstradycję

W   odpowiedzi   na   zapytanie   Departamentu   Sprawiedliwości   Stanów
Zjednoczonych Ameryki Prokuratura Okręgowa w Poznaniu uprzejmie informuje , iż
zgodnie z materiałem dowodowym uzyskanym w toku przedmiotowego postępowania,
w  następstwie  skierowania  do  Federacji  Rosyjskiej  wniosków  o   międzynarodową
pomoc prawną w sprawach karnych z zeznań świadka Jelizawiety Tairowej córki
Olega , przesłuchanej w dniu 15 grudnia 2011 roku   wynika,  iż była ona zatrudniona
w salonie antykwarycznym „ Bohema „ Moskwa, ulica Nowyj Arbat 31/12 od 14
grudnia 2009 roku, zaś od 1 lipca 2010 roku pełniła funkcję dyrektora generalnego.
Świadek wskazała, iż   Choczyński Aleksander   [KHOCHINSKIY Alexander] syn
Jakowa pracował w antykwariacie na stanowisku konsultanta – eksperta sztuk
pięknych. W ramach swej działalności dokonywał, za pośrednictwem tegoż
antykwariatu, sprzedaży dzieł sztuki zakupionych na różnych aukcjach oraz mających
wartość historyczną, a pochodzących z jego własnej kolekcji. Świadek nie potrafiła
wyjaśnić, w jaki sposób do kolekcji Aleksandra Choczyńskiego [Alexandra
KHOCHINSKIYEGO] trafił obraz Antonie'a Pesne'a „Dziewczyna z gołębiem „ .
Świadek potwierdziła, że obraz znajdował się w antykwariacie „Bohema", jednakże
nie był wystawiany na sprzedaż, zaś po oględzinach obrazu przez eksperta z Polski ,

obraz został wywieziony przez przedstawicieli Aleksandra Choczyńskiego. [Alexandra KHOCHINSKIYEGO]

Dodatkowo, w ramach realizacji wniosku o międzynarodową pomoc prawną w sprawach karnych skierowanego do rosyjskich organów ścigania otrzymano informację potwierdzającą , iż w lipcu 2010 roku spółce „Bohema „ zatrudniony był i przebywał między innymi: Choczyński Aleksander [ KHOCHINSKIY Alexander] syn Jakowa jako konsultant – ekspert sztuk pięknych, zwolniony w dniu 1 marca 2011 roku w związku z przejściem na emeryturę.

W dniu 17 września 2013 roku z Ministerstwa Kultury i Dziedzictwa Narodowego w Warszawie uzyskano fotografię , która ma przedstawiać Aleksandra Choczyńskiego [Alexandra KHOCHINSKIYEGO] z obrazem Antonie'a Pesne'a „Dziewczyna z gołębiem „, którą ten załączył do korespondencji mailowej z dnia 18 maja 2010 roku, w której podejrzany poinformował polskie przedstawicielstwo dyplomatyczne, iż jest w posiadaniu przedmiotowego obrazu.

W załączeniu przesyłam  fotografie podejrzanego będące w posiadaniu tutejszej jednostki.

Z wyrazami szacunku

Zastępca Prokuratora Okręgowego

Mariusz Orlicki

**Załączniki :**

- kserokopie fotografii Aleksandra Choczyńskiego [Alexandra KHOCHINSKIYEGO] potwierdzone za zgodność

- fotografie w oryginale ( 2 sztuki )



Certified translation from the Polish language



DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ

**DEPARTMENT III**

**SUPERVISION OF PRELIMINARY**

**PROCEEDINGS**

Solna 10

61-736 POZNAŃ

Tel. +48 618852022  Fax +48 618852026

e-mail: oz@poznan.po.gov.pl

a.skrzypczak@poznan.po.gov.pl

III Oz 341/13

Poznań, October 01, 2013

Re.: 95-100-22981

**Supplementary information to the request**

**for provisional arrest and extradition of**

In response to the inquiry of the United States Department of Justice, the District Prosecutor's Office in Poznań kindly advises that according to the evidence obtained in the course of the proceedings in question, as a result of addressing requests for international legal assistance in criminal matters to the Russian Federation, from the testimonies of witness Yelizaveta Tairova daughter of Oleg, interviewed on December 15, 2011, it follows that she was employed at the "Bohema" Antique Shop, Moscow, Novy Arbat 31/12 from December 14, 2009, and from July 1, 2010 she exercised the function of general manager. The witness indicated that KHOCHINSKIY Alexander son of Yakov worked at the antique shop as a consultant - fine arts expert. Within the framework of his activity he performed, through the agency of said antique shop, sales of works of art purchased at various auctions, as well as pieces of historical value originating from his own collection. The witness was unable to explain how the painting by Antoine Pesne "Girl with a Dove" came to be in Alexander

District Prosecutor's Office in Poznań
61 - 736 Poznań, Solna 10
tel. 061 885 2022 / fax. 061 885 2026
oz@poznan.po.gov.pl

KHOCHINSKIY'S collection. The witness confirmed that the painting was present at the „Bohema" antique shop, however it was not put up for sale, and after inspection by an expert from Poland the painting was taken away by representatives of Alexander KHOCHINSKIY.

Additionally, within the framework of execution of a request for international legal assistance in criminal matters addressed to Russian law enforcement authorities, information was obtained confirming that in July 2010 there worked and appeared at the "Bohema" company, amongst others: KHOCHINSKIY Alexander, son of Yakov, as a consultant - expert in fine arts, discharged on March 1, 2011 in connection with retirement.

On September 17, 2013 a photograph was obtained form the Ministry of Culture and National Heritage in Warsaw, which supposedly shows Alexander KHOCHINSKIY with the painting by Antoine Pesne "Girl with a Dove", which he enclosed with email correspondence of May 18, 2010, in which the suspect advised the Polish diplomatic post that he was in possession of the painting in question.

Enclosed please find photographs of the suspect in possession of this unit.

With kind regards,

*Deputy District Prosecutor*

*/-/ illegible signature*

*Mariusz Orlicki*

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ".

**Enclosures:**

- copies of photograph of Alexander KHOCHINSKIY certified for conformity

- original photographs (2 pieces)

*Repertory no. 1367/2013*
*I, the undersigned, Ryszard Pruszkowski, sworn translator of the English language entered on the list of sworn translators of the Minister of Justice, hereby certify that the above text is a true and complete translation of the original Polish document.*
*Warsaw, October 10, 2013*

District Prosecutor's Office in Poznań
61 - 736 Poznań, Solna 10
tel. 061 885 2022 / fax. 061 885 2026
oz@poznan.po.gov.pl

| 105TH CONGRESS 1st Session | SENATE | TREATY DOC. 105–14 |
| --- | --- | --- |

## EXTRADITION TREATY WITH POLAND

---

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMER-
ICA AND THE REPUBLIC OF POLAND, SIGNED AT WASHINGTON
ON JULY 10, 1996



JULY 9, 1997.—Treaty was read the first time and, together with the
accompanying papers, referred to the Committee on Foreign Relations
and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1997

39–118

# LETTER OF TRANSMITTAL

THE WHITE HOUSE, *July 9, 1997.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Extradition Treaty between the United States of America and the Republic of Poland, signed at Washington on July 10, 1997.

In addition, I transmit, for the information of the Senate, the report of the Department of State with respect to the Treaty. As the report explains, the Treaty will not require implementing legislation.

This Treaty will, upon entry into force, enhance cooperation between the law enforcement communities of both countries. It will thereby make a significant contribution to international law enforcement efforts.

The provisions in this Treaty follow generally the form and content of extradition treaties recently concluded by the United States.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

WILLIAM J. CLINTON.

# LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, June 13, 1997.*

The PRESIDENT,
*The White House.*

I have the honor to submit to you the Extradition Treaty be-
tween the United States of America and the Republic of Poland
("the Treaty"), signed in Washington on July 10, 1996. I rec-
ommend that the Treaty be transmitted to the Senate for its advice
and consent to ratification.

The Treaty follows closely the form and content of extradition
treaties recently concluded by the United States in most respects.
The Treaty represents part of a concerted effort by the Department
of State and the Department of Justice to develop modern extra-
dition relationships to enhance the United States ability to pros-
ecute serious offenders including, especially, narcotics traffickers
and terrorists.

The Treaty marks a significant step in bilateral cooperation be-
tween the United States and Poland. Upon entry into force, it will
replace the Extradition Treaty and Accompanying Protocol between
the United States and Poland that was signed at Warsaw on No-
vember 22, 1927, and entered into force on July 6, 1929, and the
Supplementary Extradition Treaty signed at Warsaw on April 5,
1935, and entered into force on June 5, 1936. Those treaties have
become outmoded, and the new Treaty will provide significant im-
provements. The Treaty does not require implementing legislation.

Article 1 obligates each Contracting State to extradite to the
other, pursuant to the provisions of the Treaty, any person whom
the Authorities in the Requesting State seek for prosecution or
have found guilty of an extraditable offense.

Article 2(1) defines an extraditable offense as one punishable
under the laws in both Contracting States by deprivation of liberty
for a maximum period of more than one year, or by a more severe
penalty. Use of such a "dual criminality" clause rather than a list
of offenses covered by the Treaty obviates the need to renegotiate
or supplement the Treaty as additional offenses become punishable
under the laws of both Contracting States.

Article 2(2) specifies that an extraditable offense also includes an
attempt to commit or participation in the commission of an offense,
or a conspiracy to commit (under United States law) or any type
of association to commit (under Polish law) an offense as described
in Article 2(1). Additional flexibility is provided by Article 2(3),
which provides that an offense shall be considered an extraditable
offense: (1) whether or not the laws in the Contracting States place

VI

the offense within the same category of offenses or describe the offense by the same terminology; or (2) whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

With regard to offenses committed outside the territory of the Requesting State, Article 2(4) provides the executive authority of the Requested State with discretion to grant or deny extradition if the offense for which extradition is sought would not be punishable under the laws of the Requested State in similar circumstances. Many United States criminal statutes have extraterritorial application, and the United States frequently makes requests for fugitives whose criminal activity occurred in foreign countries with the intent, actual or implied, of affecting the United States. Poland did not indicate that it anticipated any difficulty with this provision.

Article 2(5) provides that, if extradition has been granted for an extraditable offense, it shall also be granted for any other offense requested, provided that all other requirements for extradition are met, even if the latter offense is punishable by deprivation of liberty for one year or less.

Article 3 includes as extraditable offenses under the Treaty an offense in connection with taxes, duties, international transfers of funds, and importation, exportation, and transit of goods, even if the Requested State does not require the same type of fee or tax or if it does not regulate fees, taxes, duties, transit of goods, and currency transactions in the same manner as the Requesting State.

Article 4(1) provides that neither Contracting State shall be required to extradite its nationals, but the Executive Authority of the Requested State shall have the discretionary power to do so.

Article 4(2) requires the Requested State, if it refuses extradition solely on the basis of the nationality of the person sought, to submit the case to its competent authorities for a decision as to prosecution.

As is customary in extradition treaties, Article 5 incorporates a political and military offenses exception to the obligation to extradite. Article 5(1) states generally that extradition shall not be granted for an offense of a political character.

Article 5(2) specifies several categories of offenses that shall not be considered to be offenses of a political character:

(a) murder or other willful crime against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

(b) an offense for which both Contracting States are obliged pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for a decision as to prosecution;

(c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm or other grievous injury to health;

(d) an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

VII

(e) placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and

(f) an attempt to commit, or participation in the commission of, any of the foregoing offenses, as well as an association to commit these offenses as provided by the laws of Poland, or conspiracy to commit these offenses as provided by the laws of the United States.

The Treaty's political offense exception is substantially identical to that contained in several other modern extradition treaties including the treaty with Hungary, which entered into force on March 18, 1997. Offenses covered by Article 5(2)(b) include:

Aircraft hijacking covered by The Hague Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague December 16, 1970, and entered into force October 14, 1971 (22 U.S.T. 1641; TIAS No. 7192); and,

Aircraft sabotage covered by the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, done at Montreal September 23, 1971, and entered into force January 26, 1973, (24 U.S.T. 564; TIAS No. 7570).

Article 5(3) provides that extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

Article 5(4) permits the Requested State to deny extradition for military offenses that are not offenses under ordinary criminal law (for example, desertion).

Article 6(1) permits the Requested State to refuse extradition when an offense is punishable by death under the laws in the Requesting State but not under the laws of the Requested State, unless the Requesting State provides the assurance that the death penalty will not be imposed or, if imposed, will not be carried out. Article 6(2) declares that the death penalty, if imposed by the courts of the Requesting State, shall not be carried out in cases where the Requesting State has provided an assurance in accordance with Article 6(1).

Article 7 bars extradition when the person sought has been tried and convicted or acquitted with final and binding effect in the Requested State for the same offense.

Article 7(2), however, declares that extradition is not barred if the competent authorities in the Requested State have declined to prosecute for the offenses for which extradition is requested or have decided to discontinue criminal proceedings against the person sought for those offenses.

Article 8 provides that extradition shall not be granted when prosecution or execution of a sentence has become barred by the statute of limitations of the Requesting State.

Article 9 establishes the procedures and describes the documents that are required to support an extradition request. Article 9(1) requires that all requests be submitted through the diplomatic channel. Article 9(3)(c) provides that a request for the extradition of a person sought for prosecution be supported by evidence justifying committal for trial if the offense had been committed in the Requested State.

Article 10 establishes the procedures under which documents submitted pursuant to the provisions of this Treaty shall be received and admitted into evidence.

Article 11 requires that all documents submitted by the Requesting State be translated into the language of the Requested State.

Article 12 sets forth procedures for the provisional arrest and detention of a person sought pending presentation of the formal request for extradition. Article 12(4) provides that if the Requested State's executive authority has not received the request for extradition and supporting documentation within sixty days after the provisional arrest, the person must be discharged from custody. Article 12(5) provides explicitly that discharge from custody pursuant to Article 12(4) does not prejudice subsequent rearrest and extradition of that person upon later delivery of the extradition request and supporting documents.

Article 13 provides that the Requested State may request that a Requesting State supplement a request for extradition if the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the Treaty requirements.

Article 14 specifies the procedures governing surrender and return of persons sought. It requires the Requested State to provide prompt notice to the Requesting State regarding its decision on the request for extradition. If the request is denied in whole or in part, Article 14(2) requires the Requesting State to provide information regarding the reasons therefor. If extradition is granted, the person sought must be removed from the territory of the Requested State within the time prescribed by its law or, if the law does not provide a specific time for surrender, within 30 days from the date on which the Requesting State is notified.

Article 15 permits refusal of an extradition request for a person convicted in absentia, if the executive authority of the Requested State determines that the proceedings did not ensure the minimum right to defense to which the person is entitled. Extradition may be granted, however, if the Requesting State supplies a guarantee deemed adequate by the Requested State that the case will be re-opened with a guaranteed right of defense.

Article 16 concerns temporary and deferred surrender. Article 16(1) states that, if the extradition request is granted for a person being prosecuted for an offense other than that for which extradition is sought or is serving a sentence in the territory of the Requested State, that State may temporarily surrender the person to the Requesting State solely for the purpose of prosecution. Alternatively, Article 16(2) provides that the Requested State may postpone the extradition proceedings until its prosecution has been concluded and the sentence has been served.

Article 17 sets forth a non-exclusive list of factors to be considered by the Requested State in determining to which State to surrender a person sought by more than one State.

Article 18(1) provides for the seizure and surrender to the Requesting State of property connected with the offense for which extradition is granted, to the extent permitted under the law of the Requested State. Such property may be surrendered even when extradition cannot be effected due to the death, disappearance, or es-

cape of the person sought. In accordance with Article 18(2), surrender of property may be deferred if it is needed as evidence in the Requested State and may be conditioned upon satisfactory assurances that it will be returned. Article 18(3) imposes an obligation to respect the rights of third parties in affected property.

Article 19 sets forth the rule of speciality. Article 19(1) provides, subject to specific exceptions, that a person extradited under the Treaty may not be detained, tried, or punished for an offense committed prior to extradition other than that for which extradition has been granted, unless a waiver of the rule is granted by the executive authority of the Requested State. Similarly, under Article 19(2), the Requesting State may not extradite such person to a third State for an offense committed prior to the original surrender unless the Requested State consents. However, Article 19(3) makes clear that these restrictions do not apply if the extradited person leaves the Requesting State after extradition and voluntarily returns to it or fails to leave the Requesting State within thirty days of being free to do so.

Article 20 permits surrender to the Requesting State without further proceedings if the person sought provides written consent thereto. The Rule of Specialty set out in Article 19 will not apply to a waiver.

Article 21 governs the transit through the territory of one Contracting State of a person being surrendered to the other State by a third State.

Article 22 contains provisions on representation and expenses that are similar to those found in other modern extradition treaties. Specifically, the Requested State is required to represent the interests of the Requesting State in any proceedings arising out of a request for extradition. The Requesting State is required to bear the expenses related to the translation of documents and the transportation of the person surrendered. Article 22(3) clarifies that neither State shall make any pecuniary claim against the other State arising out of extradition procedures under the Treaty.

Article 23 states that the United States Department of Justice and the Ministry of Justice of Poland may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving Treaty implementation procedures. In addition, the Requesting State is required, when requested by the Requested State, to inform the Requested State of the status of criminal proceedings against persons who have been extradited.

Article 24, like the parallel provision in almost all recent United States extradition treaties, states that the Treaty shall apply to offenses committed before as well as after the date the Treaty enters into force, with certain qualifications.

Article 25 identifies the executive authorities for each Party, the Secretary of State for the United States and the Minister of Justice-Attorney General for Poland, or a person designated by the respective executive authorities.

Ratification and entry into force are addressed in Article 26. That Article provides that the Parties shall exchange instruments of ratification at Warsaw and that the treaty shall enter into force 30 days after the exchange of instruments of ratification. Upon

x

entry into force of this Treaty, the 1927 Extradition Treaty between the United States and Poland, as supplemented in 1935, shall cease to have effect between the United States and Poland, with certain noted exceptions.

Under Article 27, either Contracting State may terminate the Treaty at any time upon written notice to the other Contracting State, with termination to become effective six months after the date of receipt of such notice.

A Technical Analysis explaining in detail the provisions of the Treaty is being prepared by the United States negotiating delegation and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate at an early date.

Respectfully submitted.

MADELEINE ALBRIGHT.

EXTRADITION TREATY

BETWEEN

THE UNITED STATES OF AMERICA

AND

THE REPUBLIC OF POLAND

(1)

2

The United States of America and the Republic of Poland;

Recalling the Extradition Treaty and accompanying Protocol between the United States of America and the Republic of Poland signed at Warsaw November 22, 1927 and the Supplementary Extradition Treaty signed at Warsaw April 5, 1935; and

Desiring to provide for more effective cooperation between the two States in the suppression of crime and to facilitate the relations between the two States in the area of extradition by concluding a new treaty for the extradition of offenders;

Have agreed as follows:

3

- 2 -

Article 1

Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense.

Article 2

Extraditable Offenses

1. An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.

2. An offense shall also be an extraditable offense if it consists of an attempt to commit, or participation in the commission of, an offense described in paragraph 1 of this Article. Any type of association to commit offenses described in paragraph 1 of this Article, as provided by the laws of Poland, and conspiracy to commit an offense described in paragraph 1 of this Article, as provided by the laws of the United States, shall also be extraditable offenses.

3. For the purposes of this Article, an offense shall be an extraditable offense:

(a)     whether or not the laws in the Contracting States place the
        offense within the same category of offenses or describe the
        offense by the same terminology; or

(b)     whether or not the offense is one for which United States
        federal law requires the showing of such matters as interstate
        transportation, or use of the mails or of other facilities
        affecting interstate or foreign commerce, such matters being
        merely for the purpose of establishing jurisdiction in a United
        States federal court.

4

- 3 -

4. If the offense has been committed outside the territory of the Requesting State, extradition shall be granted if the laws in the Requested State provide for the punishment of an offense committed outside its territory in similar circumstances. If the laws in the Requested State do not so provide, the executive authority of the Requested State may, in its discretion, grant extradition.

5. If extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request, even if the latter offense is punishable by deprivation of liberty for one year or less, provided that all other requirements for extradition are met.

## Article 3
### Fiscal Offenses

An offense shall also be an extraditable offense if it consists of an offense in connection with taxes, duties, international transfers of funds, and importation, exportation, and transit of goods, even if the law of the Requested State does not require the same type of fee or tax or does not regulate fees, taxes, duties, transit of goods, and currency transactions in the same manner as the law of the Requesting State.

## Article 4
### Nationality

1. Neither Contracting State shall be bound to extradite its own nationals, but the Executive Authority of the Requested State shall have the power to extradite such persons if, in its discretion, it be deemed proper and possible to do so.

2. If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its competent authorities for a decision as to prosecution.

- 4 -

## Article 5

### Political and Military Offenses

1. Extradition shall not be granted if the offense for which extradition is requested is an offense of a political character.

2. For the purposes of this Treaty, the following offenses shall not be considered to be of a political character:

    (a)    murder or any other offense against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

    (b)    an offense for which both Contracting States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution; and

    (c)    murder, manslaughter, malicious wounding, or inflicting grievous bodily harm or other grievous injury to health;

    (d)    an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

    (e)    placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and,

    (f)    an attempt to commit, or participation in the commission of, any of the foregoing offenses, as well as an association to commit these offenses as provided by the laws of Poland, or conspiracy to commit these offenses as provided by the laws of the United States.

3. Notwithstanding paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

6

- 5 -

4.  The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

### Article 6
### Capital Punishment

1.  When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the Requested State may refuse extradition unless the Requesting State, if so requested, provides assurances that the death penalty will not be imposed or, if imposed, will not be carried out.

2.  In instances in which a Requesting State provides an assurance in accordance with paragraph 1 of this Article, the death penalty, if imposed by the courts of the Requesting State, shall not be carried out.

### Article 7
### Prior Prosecution

1.  Extradition shall not be granted when the person sought has been convicted or acquitted with final and binding effect in the Requested State for the offense for which extradition is requested.

2.  Extradition shall not be precluded by the fact that the competent authorities in the Requested State have decided either:

    (a)     not to prosecute the person sought for the acts for which extradition is requested; or

    (b)     to discontinue any criminal proceedings which have been instituted against the person sought for those acts.

7

- 6 -

Article 8

Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requesting State.

Article 9

Extradition Procedures and Required Documents

1. A request for extradition shall be submitted through the diplomatic channel.

2. A request for extradition shall be supported by:

(a)    documents, statements, or other types of information which describe the identity, nationality, and probable location of the person sought;

(b)    information describing the facts of the offense and the procedural history of the case;

(c)    the text of the law describing the essential elements of the offense for which extradition is requested;

(d)    the text of the law prescribing the punishment for the offense;

(e)    a statement of the provisions of law describing any time-limit on the prosecution or enforcement of the penalty for the offense for which extradition has been sought; and

(f)    the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

3. A request for extradition of a person who is sought for prosecution shall also be supported by:

8

- 7 -

(a)   a copy of the warrant or order of arrest, if any, issued by a
judge or other competent authority;

(b)   a copy of the charging document, if any; and

(c)   such information as would justify the committal for trial of
the person if the offense had been committed in the
Requested State.

4.  A request for extradition relating to a person who has been found guilty of the
offense for which extradition is sought shall also be supported by:

(a)   a copy of the warrant or order of arrest, if any, issued by a
judge or other competent authority;

(b)   a copy of the judgment of conviction or, if such copy is not
available, a statement by a judicial authority that the person
has been found guilty;

(c)   information establishing that the person sought is the person
to whom the finding of guilt refers;

(d)   a copy of the sentence imposed, if the person sought has been
sentenced, and a statement establishing to what extent the
sentence has been carried out; and

(e)   in the case of a person who has been convicted in absentia,
the documents required in paragraph 3.

Article 10

Admissibility of Documents

The documents which accompany an extradition request shall be received and
admitted as evidence in extradition proceedings if:

(a)   in the case of a request from the United States, they are
certified by the proper diplomatic or consular representative
of the Republic of Poland in the United States;

- 8 -

(b)    in the case of a request from the Republic of Poland, they are
certified by the principal diplomatic or consular officer of the
United States resident in the Republic of Poland, as provided
by the extradition laws of the United States; or

(c)    they are certified or authenticated in any other manner
accepted by the law of the Requested State.

### Article 11
#### Translation

All documents submitted by the Requesting State shall be translated into the
language of the Requested State.

### Article 12
#### Provisional Arrest

1. In case of urgency, a Contracting State may apply for the provisional arrest of
the person sought before the request for extradition is submitted. An application for
provisional arrest may be transmitted through the diplomatic channel or directly between
the United States Department of Justice and the Ministry of Justice of the Republic of
Poland. The facilities of the International Criminal Police Organization (INTERPOL)
may be used to transmit such a request.

2. The application for provisional arrest shall contain:

(a)    a description of the person sought and information
concerning the person's nationality;

(b)    the location of the person sought, if known;

(c)    a brief statement of the facts of the case, including, if possible,
the time and location of the offense;

(d)    a description of the laws violated;

10

- 9 -

(e)    a statement of the existence of either:

    (i)    a warrant of arrest for a person sought for prosecution or already found guilty but not yet sentenced, or

    (ii)    a judgment of conviction against a person sought for the enforcement of a sentence; and

(f)    a statement that a request for extradition for the person sought will follow.

3. The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4. A person who is provisionally arrested shall be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 9.

5. The fact that the person sought has been discharged from custody pursuant to paragraph (4) of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

Article 13

Additional Information

If the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the requirements of this Treaty, that State may request that additional information be furnished within such a reasonable length of time as it specifies. Such additional information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of Poland or through the diplomatic channel.

- 10 -

## Article 14

### Decision and Surrender

1. The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4. Surrender of the person sought shall take place within such time as may be prescribed by the laws of the Requested State. If the law of the Requested State does not provide a specific time for surrender, it shall take place within thirty (30) days from the date on which the Requesting State is notified of the decision to extradite.

5. If the person sought is not removed from the territory of the Requested State within the time required under paragraph (4), he may be set at liberty. The Requested State may subsequently refuse to extradite the person sought for the same offense.

6. If circumstances beyond its control prevent a Contracting State from timely surrendering or taking delivery of the person to be extradited, it shall notify the other Contracting State before the expiration of the time limit. In such a case the competent authorities of the Contracting States may agree upon a new date for the surrender.

## Article 15

### Convictions in Absentia

If a Contracting State has applied to the other State for extradition of a person convicted in absentia, the executive authority of the Requested State may refuse to surrender the person if it deems that the proceedings in absentia did not ensure the minimum right to defense to which the person charged is entitled. Extradition may be

12

- 11 -

effected, however, if the Requesting State guarantees, in a manner deemed adequate, that the case against the person whose extradition is requested will be reopened, with a guaranteed right of defense.

### Article 16
### Temporary and Deferred Surrender

1. If the extradition request is granted in the case of a person who is being prosecuted for an offense other than that for which extradition is sought or is serving a sentence in the territory of the Requested State for an offense other than that for which extradition is sought, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States.

2. The Requested State may postpone the extradition proceedings against a person who is being prosecuted for the same offense for which that person is sought or any other offense, or who is serving a sentence in that State for an offense other than that for which extradition is sought. The postponement shall continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

### Article 17
### Requests for Extradition Made by Several States

If the Requested State receives requests from the other Contracting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State it will surrender the person. In making its decision, the Requested State shall consider all relevant factors, including but not limited to:

- 12 -

(a)  whether the requests were made pursuant to treaty;

(b)  the place where each offense was committed;

(c)  the gravity of the offenses;

(d)  the nationality of the victim;

(e)  the possibility of further extradition between the Requesting States; and

(f)  the chronological order in which the requests were received from the Requesting States.

### Article 18
### Seizure and Surrender of Property

1. To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted. The items mentioned in this Article may be surrendered, to the extent permitted under the law of the Requested State, even when extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2. The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3. The rights of third parties in such property shall be duly respected.

### Article 19
### Rule of Speciality

1. A person extradited under this Treaty may not be detained, prosecuted, sentenced, or punished in the Requesting State except for:

14

- 13 -

(a)  an offense for which extradition has been granted or a
differently denominated offense based on the same facts on
which extradition was granted, provided such offense is
extraditable or is a lesser form of such offense;

(b)  an offense committed after the extradition of the person; or

(c)  an offense for which the executive authority of the Requested
State has consented to the person's detention, prosecution,
sentencing, or punishment. For the purpose of this
subparagraph:

 (i)  the Requested State may require the submission of the
documents specified in Article 9; and

 (ii)  unless the Requested State objects in writing, the
person extradited may be detained by the Requesting
State for ninety (90) days, or for such longer period of
time as the Requested State may authorize, while the
request is being processed.

2. A person extradited under this Treaty may not be extradited to a third State for
an offense committed prior to the surrender unless the surrendering State consents.

3. Paragraphs 1 and 2 of this Article shall not prevent the detention, prosecution,
sentencing, or punishment of an extradited person, or the extradition of that person to a
third State, if:

(a)  that person leaves the territory of the Requesting State after
extradition and voluntarily returns to it; or

(b)  that person does not leave the territory of the Requesting
State within thirty (30) days of the day on which that person
is free to leave.

- 14 -

## Article 20

### Simplified Extradition

If the extradition of a person sought to the Requesting State is not obviously precluded by the laws of the Requested State and provided the person sought irrevocably agrees in writing to his extradition after personally being advised by a judge or competent magistrate of his rights to formal extradition proceedings and the protection afforded by them that he would lose, the Requested State may surrender the person sought without a formal extradition proceeding having taken place. In this case Article 19 shall not be applicable.

## Article 21

### Transit

1. Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Poland. The facilities of the International Criminal Police Organization (INTERPOL) may be used to transmit such a request. It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2. No authorization is required where air transportation is being used by one Contracting State and no landing is scheduled on the territory of the other Contracting State. If an unscheduled landing occurs on the territory of the other Contracting State, that Contracting State may require the request for transit as provided in paragraph 1. That Contracting State may detain the person to be transported until the request for transit is received and the transit is effected, so long as the request is received within ninety-six (96) hours of the unscheduled landing.

- 15 -

### Article 22
#### Representation and Expenses

1. The Requested State shall assist, appear in court, and represent the interests of the Requesting State, in any proceeding arising out of a request for extradition.

2. The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3. Neither State shall make any other pecuniary claim against the other State arising out of extradition procedures under this Treaty.

### Article 23
#### Consultation

1. The United States Department of Justice and Ministry of Justice of the Republic of Poland may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

2. The Requesting State shall, at the request of the Requested State, inform the Requested State of the status of criminal proceedings against persons who have been extradited, and provide a copy of the final and binding decision if one has been issued in the case in question.

### Article 24
#### Application

This Treaty shall apply to offenses committed before as well as after the date it enters into force. If, however, an offense was committed before this Treaty enters into force and was not an offense under the laws of both Contracting States at the time of its

- 16 -

commission, the executive authority of the Requested State may, in its discretion, grant extradition.

### Article 25
### Executive Authorities

For the United States of America, the executive authority shall be the Secretary of State or a person designated by the Secretary of State. For Poland, the executive authority shall be the Minister of Justice-Attorney General or a person designated by the Minister of Justice-Attorney General.

### Article 26
### Ratification and Entry into Force

1. This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged at Warsaw as soon as possible.

2. This Treaty shall enter into force 30 days after the exchange of the instruments of ratification.

3. Upon the entry into force of this Treaty, the Treaty of Extradition between the United States of America and the Republic of Poland and Accompanying Protocol signed at Warsaw November 22, 1927, and the Supplementary Extradition Treaty signed at Warsaw April 5, 1935, shall cease to have effect between the United States of America and the Republic of Poland. Nevertheless, the 1927 Treaty, as supplemented in 1935, shall apply to any extradition proceedings in which extradition documents have already been submitted to the Requested State at the time this Treaty enters into force, except that Articles 2, 3, 5, 16, 19, and 20 of this Treaty shall be applicable to such proceedings. Article 19 of this Treaty shall apply to persons found extraditable under the prior Treaty.

18

- 17 -

### Article 27
### Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State, and the termination shall be effective six months after the date of the receipt of such notice.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments have signed this Treaty.

DONE at Washington, this tenth day of July, 1996, in duplicate, in the English and Polish languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA:       FOR THE REPUBLIC OF POLAND:

Agreement between the United States of America and the Republic of Poland
on the application of the Extradition Treaty between the United States
of America and the Republic of Poland signed 10 July 1996, pursuant to
Article 3(2) of the Agreement on Extradition between the United States
of America and the European Union signed at Washington 25 June 2003

The United States of America and the Republic of Poland (the "Contracting States"
referred to in the Annex to this Agreement),

In view of Article 3(2) of the Agreement on Extradition between the United States of
America and the European Union signed at Washington 25 June 2003,

Have agreed as follows:

### Article 1

As contemplated by Article 3(2) of the Agreement on Extradition between the United
States of America and the European Union signed at Washington 25 June 2003
(hereafter "the U.S.-EU Extradition Agreement"), the United States of America and the
Republic of Poland acknowledge that, in accordance with the provisions of this
Agreement, the bilateral Extradition Treaty between the United States of America and
the Republic of Poland signed at Washington on 10 July 1996 (hereafter "the U.S.-
Poland Extradition Treaty") is applied in relation to the U.S.-EU Extradition
Agreement, under the following terms:

(a)     Article 6 of the Annex to this Agreement shall be applied in place of Article 6 of
the U.S.-Poland Extradition Treaty, pursuant to Article 13 of the U.S.-EU Extradition
Agreement;

(b)     Article 9(1) of the Annex to this Agreement shall be applied in place of Article
9(1) of the U.S.-Poland Extradition Treaty, pursuant to Article 5(1) of the U.S.-EU
Extradition Agreement;

(c)     Article 9 bis of the Annex to this Agreement shall be applied to supplement the
provisions of the U.S.-Poland Extradition Treaty, pursuant to Article 14 of the U.S.-EU
Extradition Agreement;

(d)     Article 10 of the Annex to this Agreement shall be applied in place of Article 10
of the U.S.-Poland Extradition Treaty, pursuant to Article 5(2) of the U.S.-EU
Extradition Agreement;

(e)     Article 12(4) of the Annex to this Agreement shall be applied to supplement the
provisions of the U.S.-Poland Extradition Treaty, pursuant to Articles 5(1) and 7(1) of
the U.S.-EU Extradition Agreement; the previous Article 12(4) and 12(5) shall be
renumbered as Articles 12(5) and 12(6) respectively;

1

(f)     Article 17 of the Annex to this Agreement shall be applied in place of Article 17 of the U.S.-Poland Extradition Treaty, pursuant to Article 10 of the U.S.-EU Extradition Agreement;

(g)     In view of Articles 3 and 5 of this Agreement, Articles 24 and 26 of the U.S.-Poland Extradition Treaty shall be deleted.  Accordingly, Article 25 of the U.S.-Poland Extradition Treaty shall be renumbered as Article 24 of the Annex, and Article 27 of the U.S.-Poland Extradition Treaty shall be renumbered as Article 25 of the Annex.

## Article 2

The Annex reflects the integrated text of the provisions of the U.S.-Poland Extradition Treaty and the U.S.-EU Extradition Agreement as a result of Article 1 of this Agreement.  This integrated text shall apply upon entry into force of this Agreement.

## Article 3

In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Agreement shall apply to offenses committed before as well as after it enters into force.

## Article 4

This Agreement shall not apply to requests made prior to its entry into force.

## Article 5

1.     This Agreement shall be subject to ratification and the instruments of ratification shall be exchanged as soon as possible.  This Agreement shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

2.     In the event of termination of the U.S.-EU Extradition Agreement, this Agreement shall be terminated as of the date of termination of the U.S.-EU Extradition Agreement, and the U.S.-Poland Extradition Treaty shall be applied instead.  The United States of America and the Republic of Poland nevertheless may agree to continue to apply some or all of the provisions of this Agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE at Warsaw this 9th day of June, 2006, in duplicate, in the English and Polish languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE                FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:                REPUBLIC OF POLAND:

2

ANNEX

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND
THE REPUBLIC OF POLAND

### Article 1
### Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense.

### Article 2
### Extraditable Offenses

1. An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.

2. An offense shall also be an extraditable offense if it consists of an attempt to commit, or participation in the commission of, an offense described in paragraph 1 of this Article. Any type of association to commit offenses described in paragraph 1 of this Article, as provided by the laws of Poland, and conspiracy to commit an offense described in paragraph 1 of this Article, as provided by the laws of the United States, shall also be extraditable offenses.

3. For the purposes of this Article, an offense shall be an extraditable offense:

(a) whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology; or

(b) whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

4. If the offense has been committed outside the territory of the Requesting State, extradition shall be granted if the laws in the Requested State provide for the punishment of an offense committed outside its territory in similar circumstances. If the laws in the Requested State do not so provide, the executive authority of the Requested State may, in its discretion, grant extradition.

5. If extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request, even if the latter offense is punishable by

3

deprivation of liberty for one year or less, provided that all other requirements for extradition are met.

### Article 3
### Fiscal Offenses

An offense shall also be an extraditable offense if it consists of an offense in connection with taxes, duties, international transfers of funds, and importation, exportation, and transit of goods, even if the law of the Requested State does not require the same type of fee or tax or does not regulate fees, taxes, duties, transit of goods, and currency transactions in the same manner as the laws of the Requesting State.

### Article 4
### Nationality

1. Neither Contracting State shall be bound to extradite its own nationals, but the Executive Authority of the Requested State shall have the power to extradite such persons if, in its discretion, it be deemed proper and possible to do so.

2. If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its competent authorities for a decision as to prosecution.

### Article 5
### Political and Military Offenses

1. Extradition shall not be granted if the offense for which extradition is requested is an offense of a political character.

2. For the purposes of this Treaty, the following offenses shall not be considered to be of a political character:

(a) murder or any other offense against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

(b) an offense for which both Contracting States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution; and

(c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm or other grievous injury to health;

(d) an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

4

(e) placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and,

(f) an attempt to commit, or participation in the commission of, any of the foregoing offenses, as well as an association to commit these offenses as provided by the laws of Poland, or conspiracy to commit these offenses as provided by the laws of the United States.

3. Notwithstanding paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4. The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

### Article 6
### Capital Punishment

Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied.

### Article 7
### Prior Prosecution

1. Extradition shall not be granted when the person sought has been convicted or acquitted with final and binding effect in the Requested State for the offense for which extradition is requested.

2. Extradition shall not be precluded by the fact that the competent authorities in the Requested State have decided either:

(a) not to prosecute the person sought for the acts for which extradition is requested; or

(b) to discontinue any criminal proceedings which have been instituted against the person sought for those acts.

5

## Article 8
### Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requesting State.

## Article 9
### Extradition Procedures and Required Documents

1. Requests for extradition and supporting documents shall be transmitted through the diplomatic channel.

2. A request for extradition shall be supported by:

(a) documents, statements, or other types of information which describe the identity, nationality, and probable location of the person sought;

(b) information describing the facts of the offense and the procedural history of the case;

(c) the text of the law describing the essential elements of the offense for which extradition is requested;

(d) the text of the law prescribing the punishment for the offense;

(e) a statement of the provisions of law describing any time limit on the prosecution or enforcement of the penalty for the offense for which extradition has been sought; and

(f) the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

3. A request for extradition of a person who is sought for prosecution shall also be supported by:

(a) a copy of the warrant or order of arrest, if any, issued by a judge or other competent authority;

(b) a copy of the charging document, if any; and

(c) such information as would justify the committal for trial of the person if the offense had been committed in the Requested State.

6

4. A request for extradition relating to a person who has been found guilty of the offense for which extradition is sought shall also be supported by:

(a) a copy of the warrant or order of arrest, if any, issued by a judge or other competent authority;

(b) a copy of the judgment of conviction or, if such copy is not available, a statement by a judicial authority that the person has been found guilty;

(c) information establishing that the person sought is the person to whom the finding of guilt refers;

(d) a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

(e) in the case of a person who has been convicted in absentia, the documents required in paragraph 3.

### Article 9 bis
### Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

### Article 10
### Admissibility of Documents

Documents that bear the certificate or seal of the Ministry or Department of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization.

### Article 11
### Translation

All documents submitted by the Requesting State shall be translated into the language of the Requested State.

7

## Article 12
### Provisional Arrest

1. In case of urgency, a Contracting State may apply for the provisional arrest of the person sought before the request for extradition is submitted. An application for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Poland. The facilities of the International Criminal Police Organization (INTERPOL) may be used to transmit such a request.

2. The application for provisional arrest shall contain:

(a)  a description of the person sought and information concerning the person's nationality;

(b)  the location of the person sought, if known;

(c)  a brief statement of the facts of the case, including, if possible, the time and location of the offense;

(d)  a description of the laws violated;

(e)  a statement of the existence of either:

(i)  a warrant of arrest for a person sought for prosecution or already found guilty but not yet sentenced, or

(ii)  a judgment of conviction against a person sought for the enforcement of a sentence; and

(f)  a statement that a request for extradition for the person sought will follow.

3. The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4. If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 9, by submitting the request and documents to the Embassy of the Requested State located in the Requesting State. In that case, the date of receipt by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under paragraph 5 of this Article in order to enable the person's continued detention.

8

5. A person who is provisionally arrested shall be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 9.

6. The fact that the person sought has been discharged from custody pursuant to paragraph (5) of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

### Article 13
### Additional Information

If the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the requirements of this Treaty, that State may request that additional information be furnished within such a reasonable length of time as it specifies. Such additional information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of Poland or through the diplomatic channel.

### Article 14
### Decision and Surrender

1. The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4. Surrender of the person sought shall take place within such time as may be prescribed by the laws of the Requested State. If the law of the Requested State does not provide a specific time for surrender, it shall take place within thirty (30) days from the date on which the Requesting State is notified of the decision to extradite.

5. If the person sought is not removed from the territory of the Requested State within the time required under paragraph (4), he may be set at liberty. The Requested State may subsequently refuse to extradite the person sought for the same offense.



6. If circumstances beyond its control prevent a Contracting State from timely surrendering or taking delivery of the person to be extradited, it shall notify the other Contracting State before the expiration of the time limit. In such a case the competent authorities of the Contracting States may agree upon a new date for the surrender.

### Article 15
### Convictions in Absentia

If a Contracting State has applied to the other State for extradition of a person convicted in absentia, the executive authority of the Requested State may refuse to surrender the person if it deems that the proceedings in absentia did not ensure the minimum right to defense to which the person charged is entitled. Extradition may be effected, however, if the Requesting State guarantees, in a manner deemed adequate, that the case against the person whose extradition is requested will be reopened, with guaranteed right of defense.

### Article 16
### Temporary and Deferred Surrender

1. If the extradition request is granted in the case of a person who is being prosecuted for an offense other than that for which extradition is sought or is serving a sentence in the territory of the Requested State for an offense other than that for which extradition is sought, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States.

2. The Requested State may postpone the extradition proceedings against a person who is being prosecuted for the same offense for which that person is sought or any other offense, or who is serving a sentence in that State for an offense other than that for which extradition is sought. The postponement shall continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

### Article 17
### Requests for Extradition or Surrender Made by Several States

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

10

2. If the Republic of Poland receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3. In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)     whether the requests were made pursuant to a treaty;
(b)     the places where each of the offenses was committed;
(c)     the respective interests of the requesting States;
(d)     the seriousness of the offenses;
(e)     the nationality of the victim;
(f)     the possibility of any subsequent extradition between the requesting States; and
(g)     the chronological order in which the requests were received from the requesting States.

### Article 18
### Seizure and Surrender of Property

1. To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted. The items mentioned in this Article may be surrendered, to the extent permitted under the law of the Requested State, even when extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2. The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3. The rights of third parties in such property shall be duly respected.

### Article 19
### Rule of Speciality

1. A person extradited under this Treaty may not be detained, prosecuted, sentenced, or punished in the Requesting State except for:

(a) an offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable or is a lesser form of such offense;

11

(b) an offense committed after the extradition of the person; or

(c) an offense for which the executive authority of the Requested State has consented to the person's detention, prosecution, sentencing, or punishment. For the purpose of this subparagraph:

(i) the Requested State may require the submission of the documents specified in Article 9; and

(ii) unless the Requested State objects in writing, the person extradited may be detained by the Requesting State for ninety (90) days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2.    A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to the surrender unless the surrendering State consents.

3.    Paragraphs 1 and 2 of this Article shall not prevent the detention, prosecution, sentencing, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a) that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b) that person does not leave the territory of the Requesting State within thirty (30) days of the day on which that person is free to leave.

Article 20
Simplified Extradition

If the extradition of a person sought to the Requesting State is not obviously precluded by the laws of the Requested State and provided the person sought irrevocably agrees in writing to his extradition after personally being advised by a judge or competent magistrate of his rights to formal extradition proceedings and the protection afforded by them that he would lose, the Requested State may surrender the person sought without a formal extradition proceeding having taken place. In this case Article 19 shall not be applicable.

Article 21
Transit

1. Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be made through the diplomatic channel or directly between the United States Department of

12



Justice and the Ministry of Justice of the Republic of Poland. The facilities of the International Criminal Police Organization (INTERPOL) may be used to transmit such a request. It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2. No authorization is required where air transportation is being used by one Contracting State and no landing is scheduled on the territory of the other Contracting State. If an unscheduled landing occurs on the territory of the other Contracting State, that Contracting State may require the request for transit as provided in paragraph 1. That Contracting State may detain the person to be transported until the request for transit is received and the transit is effected, so long as the request is received within ninety-six (96) hours of the unscheduled landing.

### Article 22
#### Representation and Expenses

1. The Requested State shall assist, appear in court, and represent the interests of the Requesting State, in any proceeding arising out of a request for extradition.

2. The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3. Neither State shall make any other pecuniary claim against the other State arising out of extradition procedures under this Treaty.

### Article 23
#### Consultation

1. The United States Department of Justice and Ministry of Justice of the Republic of Poland may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

2. The Requesting State shall, at the request of the Requested State, inform the Requested State of the status of criminal proceedings against persons who have been extradited, and provide a copy of the final and binding decision if one has been issued in the case in question.

13

### Article 24
### Executive Authorities

For the United States of America, the executive authority shall be the Secretary of State or a person designated by the Secretary of State. For Poland, the executive authority shall be the Minister of Justice-Attorney General or a person designated by the Minister of Justice-Attorney General.

### Article 25
### Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State, and the termination shall be effective six months after the date of the receipt of such notice.

14