# EXHIBIT A

# THE DOCUMENTATION PROJECT

## Federal Law on Cultural Valuables Displaced to the U.S.S.R. as a Result of World War II and Located on the Territory of the Russian Federation

Federal Law N 64-FZ of April 15, 1998
Adopted by the State Duma on February 5, 1997
Approved by the Federation Council on March 5, 1997

The present Federal Law regulates considerations governing cultural valuables displaced to the U.S.S.R. as a result of World War II and which are on the territory of the Russian Federation.

The fundamental goals of the present Federal Law are:

- to protect said valuables from misappropriation and prevent their illegal export beyond the borders of the Russian Federation as well as their unlawful transfer to whomsoever;

- to establish the necessary legal bases for treating said cultural valuables as partial compensation for the damage caused to the cultural property of the Russian Federation as a result of the plunder and destruction of its cultural valuables by Germany and its war allies during World War II;

- to protect the interests of the Russian Federation in the settlement of disputed issues with foreign states concerning said cultural valuables through consistent compliance with the principle of mutuality;

- to provide a possibility for acquainting citizens of the Russian Federation and foreign citizens, including specialists in the fields of education, science and culture, with said cultural valuables;

- to create favorable conditions for the continuous development of international cooperation in the fields of education, science and culture.

## Chapter I. General provisions

### Article 1.    Legislation of the Russian Federation on Cultural Valuables Displaced to the U.S.S.R. as a Result of World War II and Located on the Territory of the Russian Federation

Legislation of the Russian Federation on cultural valuables displaced to the U.S.S.R as a result of World War II and located on the territory of the Russian Federation shall consist of the present Federal Law and other legislative instruments promulgated in accordance with the constitution of the Russian Federation and the present Federal Law.

### Article 2.    International Legal and Other Instruments on Which the Present Federal Law Is Based

The present Federal Law is based on international legal and other instruments adopted during and following World War II, which remain in force with regard to the rules governing property under these instruments: the Peace Treaties of 1947, instruments adopted on the basis of the rights and supremacy of the occupation authorities in Germany in 1945-49, the State Treaty on the Restoration of Independent and Democratic Austria of May 15, 1955, the Treaty of Final Settlement with Germany of September 12, 1990, and also provisions of Article 107 of the United Nations Charter and the United Nations

Declaration of January 5, 1943.[1]

### Article 3. Applicability of the Present Federal Law regarding the Actual Possession of Cultural Valuables Displaced to the U.S.S.R. as a Result of World War II and Located on the Territory of the Russian Federation

The present Federal law shall be applicable to all cultural valuables displaced to the U.S.S.R. as a result of World War II located on the territory of the Russian Federation, irrespective of the actual possessor and the circumstances leading to this actual possession.

### Article 4. Basic Concepts Used in the Present Federal Law

For the purpose of the present Federal Law, the following basic concepts are used:

Restitution - A form of international legal material responsibility of a state which has committed an act of aggression or other international unlawful action, which consists in the responsibility of said state to eliminate or reduce the material damage inflicted on another state, through the restoration of the *status quo ante*, *inter alia*, through the return of property plundered and illegally removed by the first state from the territory of the other state occupied by its forces;

Compensatory restitution - A form of international legal material responsibility of an aggressor state, applied in cases when implementation of said state's responsibility in the form of regular restitution is impossible, consisting of the responsibility to compensate for the material damage inflicted on another state by handing over to the affected state objects of the same kind (or by their removal by the affected state for its own benefit) as those that were plundered and illegally removed by the aggressor state from the territory of the affected state;

Cultural valuables - Property of a religious or secular nature which is of historical, artistic, scientific or any other cultural importance: works of art, books, manuscripts, incunabula, archival materials, components and fragments of architectural, historical and artistic monuments, as well as those of monumental art and other categories of objects specified in Article 7 of the Law of the Russian Federation "On the Export and Import of Cultural Valuables";

Displaced cultural valuables - Any cultural valuables removed in implementation of compensatory restitution from the territories of Germany and its former military allies - Bulgaria, Hungary, Italy, Romania and Finland - to the territory of the U.S.S.R., pursuant to orders of the Soviet Army military command, the Soviet Military Administration in Germany or instructions of other competent bodies of the U.S.S.R and that are located at the present time on the territory of the Russian Federation;

Former enemy states - Germany and states allied with it during World War II - Bulgaria, Hungary, Italy, Romania and Finland;

Property of former enemy states - any property which is state-owned, private, municipal, or owned by public or other organizations and associations in former enemy states;

Interested states - any states (with the exception of the Russian Federation and the states specified in Article 7 of the present Federal Law) whose territory was occupied in full or in part by the forces of former enemy states;

Property of an interested state - any property which is state-owned, private, municipal, or owned by public or other organizations and associations in the interested states;

Cultural institutions - Russian state-owned (including departmental) and municipal museums, archives, libraries and other scientific, educational, entertainment and instructional institutions, and institutions and organizations operating in the fields of education, science and culture.

### Article 5. Categories of Displaced Cultural Valuables

Displaced cultural valuables, in terms of their former ownership by the state, shall include:

- cultural valuables which were the property of former enemy states;

- cultural valuables which were, in accordance with Article 4 of the present Federal Law, the property of interested states

which have lost their right of ownership to these valuables due to their failure to file a restitution claim within the time period determined by the legal instruments specified in Article 8 of the present Federal Law; and

- cultural valuables whose state title to ownership has not been established (ownerless objects).

# Chapter II. Displaced Cultural Valuables and Rights of Ownership

### Article 6.     On the Right of Ownership by the Russian Federation of Displaced Cultural Valuables

All displaced cultural valuables imported to the U.S.S.R in realization of its right to compensatory restitution and located on the territory of the Russian Federation, with the exception of those specified in Articles 7 and 8 of the present Federal Law, are the property of the Russian Federation and are federally owned.

### Article 7.     On Guarantees of the Rights of Ownership of the Republic of Belarus, the Latvian Republic, the Lithuanian Republic, the Republic of Moldova, Ukraine and the Estonian Republic to Displaced Cultural Valuables

1. The provisions of Article 6 of the present Federal Law do not affect the right of ownership of the Republic of Belarus, the Latvian Republic, the Lithuanian Republic, the Republic of Moldova, Ukraine and the Estonian Republic to cultural objects which may be among the displaced cultural valuables, but which were plundered and exported during World War II by Germany and (or) its military allies not from the territory of the Russian Soviet Federal Socialist Republic but from the territories of the Belorussian Soviet Socialist Republic, the Latvian Soviet Socialist Republic, the Lithuanian Soviet Socialist Republic, the Moldovan Soviet Socialist Republic, the Ukrainian Soviet Socialist Republic or the Estonian Soviet Socialist Republic, and which constituted the national heritage of said Union Republics and not of the other Union Republics which formed the U.S.S.R. within its borders of February 1, 1950.

2. Cultural objects specified in section 1 of this Article may be handed over to rightful ownership in the Republic of Belarus, the Latvian Republic, the Lithuanian Republic, the Republic of Moldova, Ukraine and the Estonian Republic, subject to their compliance with the conditions of Article 18, section 4 of the present Federal Law and subject also to their agreement to ensure the same approach, based on the principle of mutuality, to cultural valuables of the Russian Federation displaced to the U.S.S.R. from former enemy states and which are located on their territories.

### Article 8.     Displaced Cultural Valuables Not Covered by Articles 6 and 7 of the Present Federal Law

Articles 6 and 7 of the present Federal Law shall not be applicable to the following cultural valuables:

(1) Cultural valuables for which an interested state presents evidence of having filed a claim for their restitution before the expiration of the time period established by the legal instruments specified below:

- until March 15, 1948, concerning Bulgaria (Article 22, section 7 of the Peace Treaty with Bulgaria), Hungary (Article 24, section 7 of the Peace Treaty with Hungary), Italy (Article 75, section 6 of the Peace Treaty with Italy), and Romania (Article 23, section 7 of the Peace Treaty with Romania);

- until September 15, 1948, concerning Finland (Article 25, section 2 of the Peace Treaty with Finland);

- until February 1, 1950, concerning Germany under the procedure established by the Council of Ministers of the U.S.S.R.;

(2) Cultural valuables which were the property of religious organizations or private charitable organizations and which were used exclusively for religious or charitable purposes and did not serve the interests of militarism and (or) Nazism (Fascism);

(3) Cultural valuables which belonged to individuals who were deprived of these valuables because of their active struggle against Nazism (Fascism), including their participation in national resistance against the occupation regimes

of former enemy states and collaborationist regimes, and (or) because of their race, religion or national affiliation.

### Article 9. Conditions of Transfer of Cultural Valuables Covered by Article 8 of the Present Federal Law to the Interested States

1. Cultural valuables specified in subsections 1, 2 and 3 of Article 8 of the present Federal Law for which an interested state files a claim for their return within 18 months of the entry into force of the present Federal Law and also presents evidence that these valuables are covered by the corresponding subsection (subsections) of Article 8 of the present Federal Law and officially confirms that it has not received any lump sum compensation for the loss of these valuables from Germany or any other former enemy state, are to be conveyed to the interested state in accordance with the terms and conditions specified in Article 18 of the present Federal Law.

   The rights provided by the first paragraph of subsection 1 of this Article may be exercised by any interested state which offers to the Russian Federation, on the basis of the principle of mutuality, no less favorable legal conditions for the return of that portion of the cultural valuables of the Russian Federation plundered by former enemy states which currently is, or may be in the future, on the territory of that interested state and for which the U.S.S.R. has made restitution claims.

2. All displaced cultural valuables specified in subsections 1, 2 and 3 of Article 8 of the present Federal Law for which interested states have not filed a claim for return within 18 months of the entry into force of the present Federal Law, or presented the evidence required by said subsections of Article 8 of the present Federal Law, shall become federal property.

### Article 10. Conditions of Transfer of Cultural Valuables Specified in Subsections 2 and 3 of Article 8 of the present Federal Law to Former Enemy States

1. Cultural valuables specified in subsections 2 and 3 of Article 8 of the present Federal Law for which a former enemy state files a claim for return within 18 months after the entry into force of the present Federal Law and presents evidence that those valuables are covered by subsection 2 and (or) subsection 3 of Article 8 of the present Federal Law may be conveyed to the claimant state, as rightful owner, in accordance with the terms and conditions specified in Article 18 of the present Federal Law.

   The rights provided by the first paragraph of subsection 1 of this Article may be exercised by any of the former enemy states which takes special legislative measures to insure implementation of its obligation to return, free of charge, to the Russian Federation its cultural valuables which were plundered and illegally removed by former enemy states and which currently are, or may be in the future, located on the territory of that former enemy state.

2. All displaced cultural valuables specified in subsections 2 and 3 of Article 8 of the present Federal Law for which the appropriate former enemy state, within 18 months after the entry into force of the present Federal Law, has neither filed a claim nor presented evidence as required under said subsections of Article 8 of the present Federal Law shall become federal property.

### Article 11. Displaced Cultural Valuables Not Subject to Transfer to Foreign States or International Organizations and (or) Export from the Russian Federation

Cultural valuables (archival and other materials, heirlooms, and other valuables) that by their content or nature may serve the purpose of resurrecting the spirit of militarism and (or) Nazism (Fascism) may not be conveyed to foreign states or international organizations and (or) exported from the Russian Federation.

### Article 12. Displaced Cultural Valuables That Are Family Heirlooms

1. Displaced cultural valuables that are family heirlooms (family archives, photographs, letters, decorations and awards, portraits of family members or their ancestors), which have become federal property according to Article 6 of the present Federal Law, may for humanitarian reasons be handed over to authorized representatives of the families to which these valuables (heirlooms) had belonged, in accordance with the terms and conditions of Article 19 of the present Federal Law.

2. Application of section 1 of this Article shall not extend to the family heirlooms of persons active in militarist and (or) Nazi (Fascist) regimes.

### Article 13.   Rights of Cultural Institutions Regarding Displaced Cultural Valuables

1. Cultural institutions, which under the Civil Code of the Russian Federation are endowed with the right of operational management of displaced cultural valuables which under Article 6 of the present Federal Law are federal property, shall exercise the rights of ownership, use and disposal of said cultural valuables consonant with the objective of their activities and the purpose of the valuables. However, alienation and (or) transfer of these cultural valuables, except as provided by section 2 of this Article, may be effected only on the basis of a federal law and in accordance with the terms and conditions provided in the present Federal Law.

2. Duplicates of displaced cultural valuables which are within the operational management of cultural institutions (books, lithographs and other printed publications) may be the subject of cultural exchange with foreign institutions and organizations in cases where these duplicates are of no interest to other cultural institutions of the Russian Federation.

## Chapter III. International Cooperation concerning Questions of Identification and Return of Cultural Valuables of the Russian Federation

### Article 14.   Cultural Valuables Illegally Exported from the Territory of the Russian Federation Occupied by German Troops and German War Allies during World War II

The Russian Federation will cooperate with the states which jointly with the U.S.S.R. exercised supreme authority in Germany during its occupation - the United Kingdom of Great Britain and Northern Ireland, the United States of America, and the French Republic - with the aim of identifying and returning to ownership of the Russian Federation cultural valuables which might have been displaced to these states from the respective occupation zones of Germany.

The Russian Federation will also cooperate to the same ends with all states in which its cultural valuables may be located, and which have signed or acceded to the United Nations Declaration of January 5, 1943,[2] by concluding appropriate international treaties as provided in Article 22 of the present Federal Law.

### Article 15.   Conditions for Exchange of Displaced Cultural Valuables for Cultural Valuables of the Russian Federation Located beyond the Borders of the Russian Federation

The exchange of displaced cultural valuables for cultural valuables of the Russian Federation, which are located beyond the borders of the Russian Federation, and for which the Russian Federation has not filed restitution claims, is permissible only in case of equivalent value of said valuables as determined by the duly considered decision of an authorized federal body for the preservation of cultural valuables. Such exchange shall be formalized through an international treaty of the Russian Federation taking into account the provisions of Chapter V of the present Federal Law.

## Chapter IV. Procedure for Implementation of the Present Federal Law

### Article 16.   Competent Federal Body for the Preservation of Cultural Valuables

1. Authority for the preservation of displaced cultural valuables and the drafting of decisions on questions of right of ownership of valuables shall be entrusted to a competent federal body for the preservation of cultural valuables (henceforth the Federal Body).

2. The Federal Body shall be assigned the following functions:

- to examine claims of foreign countries and applications of foreign citizens in accordance with Articles 18 and 19 of the present Federal Law;

- to draft written decisions on such claims and applications, and to determine such applications;

- to distribute displaced cultural valuables among cultural institutions with the practical aim of using these valuables as compensation for the damage incurred by these cultural institutions as the result of the plunder and destruction of their property by the troops of former enemy states;

- to resolve questions in dispute between cultural institutions concerning the distribution of displaced cultural valuables among them;

- to determine the categories and storage conditions for displaced cultural valuables not subject to transfer to foreign countries or international organizations and (or) to export from the Russian Federation;

- to issue permits to cultural institutions to exercise their right under Article 13 of the present Federal Law to use duplicates of displaced cultural valuables for cultural exchange with foreign institutions and organizations;

- to exercise control concerning compliance with the rules of foreign trade activity which affects displaced cultural valuables;

- to present to the government of the Russian Federation, jointly or in agreement with the Ministry of Foreign Affairs of the Russian Federation, proposals for conducting negotiations concerning displaced cultural valuables;

- to monitor compliance with the present Federal Law.

3. The decisions adopted by the Federal Body in accordance with its functions and authority as provided in this Article are binding. Decisions of the Federal Body may be appealed in accordance with the legislation of the Russian Federation. A decision that has not been appealed within the time period established by legislation of the Russian Federation is considered to have entered into force and may be amended or canceled only by another decision of the Federal Body.

4. An Interagency Council on Questions of Cultural Valuables Displaced as a Result of World War II will be set up as a collegial advisory body. The head of the Federal Body will be chairman of the Interagency Council on Questions of Cultural Valuables Displaced as a Result of World War II.

## Article 17.   Applications and Claims of Cultural Institutions Concerning Displaced Cultural Valuables and Return of Their Property

A cultural institution may apply to the Federal Body for the allocation to it of certain cultural valuables from among the displaced cultural valuables in compensation for the damage incurred by this institution as a result of the plunder and (or) destruction of its property by the troops of former enemy states; it may also file claims disputing the allocation of such property. The procedure for examination of these applications and claims shall be determined by a regulation approved by the government of the Russian Federation.

A cultural institution may also appeal to the Federal Body for the return of cultural valuables formerly in its possession which, without justification, have been conveyed to another cultural institution.

## Article 18.   Claims of Foreign States for Displaced Cultural Valuables

1. Claims regarding displaced cultural valuables covered in subsections 1, 2 and 3 of Article 8 of the present Federal Law can be made by the government of the claimant state only to the government of the Russian Federation; claims of natural and legal persons, municipal bodies, non-governmental and other organizations and associations are not subject to consideration.

2. The transfer of a displaced cultural valuable to the claimant state should be carried out on the basis of a federal law. A federal law on the transfer of displaced cultural valuables shall be passed on the basis of a bill introduced by the government of the Russian Federation in agreement with a body of state authority of the subject of the Russian Federation on whose territory is located the regional cultural institution entrusted with the operational management

of said cultural valuable.

3. Without the adoption of the relevant federal law, no displaced cultural valuable may be the subject of an act of transfer, donation, exchange or any other form of alienation for the benefit of states, organizations or individuals.

4. The transfer of a claimed displaced cultural valuable to the claimant state is subject to reimbursement by said state of the expenses for its identification, expert examination, storage and restoration, as well as for its transfer (transportation costs, etc.).

5. Based on a federal law on the transfer of the displaced cultural valuable, the Federal Body shall instruct the cultural institution charged with the operational management of the displaced cultural valuable that is the subject of the claim to conclude an agreement with the organization (institution or individual) authorized by the government of the claimant state on the basis of which the reimbursement of the expenses provided for in section 4 of this Article and the actual transfer of the valuable (heirloom) are carried out.

The original document evidencing the transfer of the displaced cultural valuable shall be registered and stored at the Federal Body, and copies of the document shall be stored by the cultural institution and the interested parties.

## Article 19.    Claims for Family Heirlooms

1. Claims for displaced cultural valuables which are family heirlooms in accordance with Article 12 of the present Federal Law may be filed with the Federal Body by duly authorized representatives of families to whom the valuables (heirlooms) formerly belonged.

2. If a claim is recognized, the Federal Body will issue a decision to transfer the family heirloom which is the object of the claim to the family to which it formerly belonged, subject to payment of its value as well as reimbursement of the costs of its identification, expert examination, storage, restoration and transfer (transportation etc.).

3. The cultural institution charged with the operational management of the displaced cultural valuable being claimed shall conclude an agreement, on instruction of the Federal Body, with the duly authorized representative of the family to which the cultural valuable (heirloom) formerly belonged, in accordance with which the payment for its value and the reimbursement of the expenses covered in section 2 of this Article as well as the actual transfer of the valuable (heirloom) are carried out.

The original document evidencing the transfer of the cultural valuable (heirloom) shall be registered and stored at the Federal Body and copies shall be stored at the cultural institution and by the parties concerned.

## Article 20.    Displaced Cultural Valuables Located in Cultural Institutions of Subjects of the Russian Federation or in Municipal Cultural Institutions

Prior to expiration of the period of acceptance for consideration of claims of foreign states for displaced cultural valuables, as provided in Articles 9 and 10 of the present Federal Law, those cultural valuables which are located in cultural institutions of subjects of the Russian Federation or in municipal cultural institutions shall be considered as federal property in accordance with Article 6 of the present Federal Law. The redistribution of displaced cultural valuables among federal cultural institutions of subjects of the Russian Federation or municipal cultural institutions is not permissible prior to expiration of the time period referred to above.

## Article 21.    Liability for Violation of the Present Federal Law

Individuals guilty of violations of the present Federal Law shall bear administrative, civil and criminal liability in accordance with the laws of the Russian Federation.

# Chapter V. The Present Federal Law and International Treaties of the Russian Federation

### Article 22.    International Treaties Concluded by the Russian Federation Pursuant to the Objectives of the Present Federal Law

The Russian Federation shall conclude treaties under international law which promote the achievement of the objectives of the present Federal Law, including international treaties:

- on the settlement of questions concerning the reimbursement of expenses of the Russian Federation and its cultural institutions for the preservation and restoration of displaced cultural valuables which were conveyed to foreign states through extracontractual procedures or in accordance with international treaties which contain no provisions for such reimbursement and which were concluded by the government of the U.S.S.R. or the government of the Russian Federation with governments of other states prior to the entry into force of the present Federal Law;

- on the equivalent exchange of displaced cultural valuables for cultural valuables of the Russian Federation located beyond the borders of the Russian Federation;

- on assistance to cultural institutions of the Russian Federation in carrying out cooperation with cultural institutions of other states to exchange displaced cultural valuables for cultural valuables which were lawfully removed from the territory of the Russian Federation at various times as well as to purchase such valuables;

- on governmental guarantees by the receiving state to ensure the preservation and inviolability of displaced cultural valuables while on display in art galleries, international exhibitions or other expositions;

- on the return to the Russian Federation of its cultural valuables which were plundered and illegally removed from the territory of the U.S.S.R. by the occupation troops of former enemy states.

### Article 23.    Ratification of International Treaties of the Russian Federation Concerning the Cultural Property of the Russian Federation

International treaties of the Russian Federation concerning displaced cultural valuables, like any other international treaty of the Russian Federation concerning its cultural property, are subject to ratification.

## Chapter VI. Final Provisions

### Article 24.    The Entry into Force of the Present Federal Law

The present Federal Law shall enter into force on the day of its official publication.

### Article 25.    Harmonization of Normative Legal Instruments with the Present Federal Law

It shall be proposed to the president of the Russian Federation and to the government of the Russian Federation to harmonize their normative legal instruments with the present Federal Law.

Back to Introduction | Back to Russian Law on "Trophy Art" Contents | Forward to Russian Version

# EXHIBIT B

mgr Katarzyna Bartkowiak
Certified translator of English

*Certified translation from Polish into English, from the original of certified translation from Russian Repertory No. 491/2015 of 23 March 2015 prepared in Leipzig by mgr Malgorzata Panasiuk, certified translator of English and Russian, recorded on the list of sworn translators kept by Minister of Justice under no. TP/4455/05.*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Ministry of Culture and National Heritage

Warsaw, 28 February 2011

Jacek Miler
Director of the Cultural Heritage Department
DDK/700/11/ER

Mr
Aleksandr Jakowlewicz Choczinskij

Dear Aleksander Jakowlewicz!

In reference to previous correspondence regarding Antoine Pesne's painting titled "Girl with Pigeon", which is currently in your possession, I would like to underline that pursuant to the position of Polish authorities, this work of art constitutes the property of a museum located in Poznań, from which it was stolen during World War II.

It follows from the information received via e-mail that the canvass was brought to Russia by your father, who participated in World War II. In relation to the above, I would like to emphasise that pursuant to the decision of the Constitutional Court of the Russian Federation of 20 July 1999 on the Russian Federation's Act of 15 April 1998 *on the Restitution of Cultural Assets*, the provisions of this Act apply solely to those cultural assets which have been brought to the Union of Soviet Socialist Republics from the territory of Germany, Bulgaria, Hungary, Italy, Romania and Finland upon an order of the Red Army Command, and only in periods when these bodies were duly authorised to conduct activities related to compensation restitution.

Compensation restitution could apply solely to those cultural assets which, prior to their relocation, were in the possession of enemy states. Cultural assets of other states and stolen by Germans or their allies, could not be deemed to be the rightful property of enemy states, their natural or legal persons and, therefore, could not be used as compensation for damage caused to the property of the former Soviet Union. As a result, the Russian Federation could not acquire the ownership rights to cultural assets which formed the property of other states prior to their plunder by Germans or their allies. Therefore, owners of cultural assets who hold – pursuant to the Peace Treaties of 1947 and other acts of law – the right to their restitution by the government of their state, have not been deprived of their ownership rights to cultural assets.

KHOCHINSKY-USAO-000156

In this context, the Constitutional Court points out that pursuant to Articles 3, 5 and 6 of the Act cultural assets constituting the property of states plundered by Germans and their allies had been incorporated into the property of the Russian Federation and constitute federal property. As a result, the damage caused to Russia by the aggressor state will be compensated for at the cost of states which themselves fell victim to aggression, which is in conflict with generally-accepted international law standards, under which the aggressor state should bear responsibility for initiating and waging invasive war. As a result, a state which fell victim to aggression cannot be subjected to sanctions which should be imposed solely on aggressor states.

In regard to the above, I hereby provide you with a restitution statement confirming the origin of the painting "Girl with Pigeon" by Antoine Pesne. At the same time, I would like to express the hope that you will soon decide to return the historical canvass, which should constitute part of the collection of the National Museum in Poznań.

Yours sincerely,
Jacek Miler
[(-) illegible signature]

[*Each page of the document bears the following stamps:*
1. *Round stamp with the national emblem of the Republic of Poland in the centre and the following circumscription:* District Prosecutor's Office in Poznań
2. *Stamp:*
   I hereby certify that this document is a complete and correct copy of the original.
   10 March 2015
   Magdalena Kałużna, Clerk
   *(-) illegible signature*]

[*Contact details of the Ministry of Culture and National Heritage*]

*I, the undersigned Katarzyna Bartkowiak, a sworn translator of English, recorded on the list of sworn translators kept by Minister of Justice under no. TP/201/14, do hereby certify and attest the above to be an accurate and complete translation of the original of the Polish document presented to me.*

Repertory no. 17/2015                                            Warsaw, 23 March 2015
                                                                 mgr Katarzyna Bartkowiak

KHOCHINSKY-USAO-000157

# EXHIBIT C

# Center for Art Law

Posted on May 20, 2013November 26, 2013 | by Irina Tarsis, Esq. | art, Restitution

# Et tu, Poland?! Poland seeks return of 18 paintings taken by the Soviet Red Army in 1945



(http://www.auctioncentralnews.com/images/stories/2013_05/2/2013_0515_PolandPaintings_lead

'Madonna and Child' by Lucas Cranach the Elder, sought by Poland for recovery from the Pushkin Museum.

The Russian Federation should beware all Ides. This Ides of May, on May 15, 2013, Poland's Minister of Culture and National Heritage, Bogdan Zdrojewski, broached the subject of recovering important art works from Russian museums. The works in question are listed in the "official restitution request by Poland;" they include paintings by Lucas Cranach the Elder and Jan Bruegel the Elder. Some pieces are located in Moscow in the Pushkin State Museum of Fine Arts (http://www.lootedart.com/MFEU4M71089) and others are in the Saratov State Art Museum (http://www.russianmuseums.info/M1453).

These works probably belong to the so-called Twice Plundered victims; they were most likely taken by the Germans at the start of the war and then displaced for the second time by the victorious Red Army as spoils of war.



(http://upload.wikimedia.org/wikipedia/commons/6/6c/Sv%C4%9Bt_knihy_2010_-_Bogdan_Zdrojewski.JPG)

Bogdan Zdrojewski, photo by Matěj Baťha.

Some of the works were reported as being listed on museum websites as unidentified. Not surprisingly requests for the return of these cultural objects have been filed on a number of occasions but invariably they have been dismissed. In light of the improving relations between Poland and the Russian Federation, Zdrojewski is hoping for a different, more amiable outcome.

The immediate response from the Russian Cultural Ministry is a categorical no. As always, there is a block against this and all returns of artworks, or other cultural valuables, that were brought onto the territory of the Soviet Union after World War II. For example, Zdrojewski's counterpart, Vladimir Medinski, has been quoted as saying that any and all efforts to change the property rights of cultural valuables and artworks in Russia would be unwelcome, particularly because the trophy art taken from the territory of Germany and its allies was "paid for in blood of the Russian soldiers."



(http://image.newsru.com/pict/id/large/1563261_20130516175347.gif)

Vladimir Medinski, Newsru.com.

Medinski bases his response on the 1998 law "On Cultural valuables Displaced to the USSR as a Result of the Second World War and Located on the Territory of the Russian Federation" which nationalizes trophy art and declines return. However, Medinski admitted that the Ministry would be ready to faithfully execute favorable restitution laws if such were ever adopted. Given that there is are no known domestic initiative to alter the 1998 law and initiatives by the foreign nations have been futile, it is unlikely that Poland will get it's most recent request granted.

Other pending claims for cultural property located on the territory of the Russian Federation include the ongoing Chabad (http://www.itsartlaw.com/2013/02/russia-is-no-congo-moscow-beliefs-and.html)efforts (http://www.itsartlaw.com/2013/02/russia-is-no-congo-moscow-beliefs-and.html)* and the Hungarian claims (http://www.comartrecovery.org/sites/default/files/docs/events/BERLIN_PAPER_FEB2009.pdf).

Sources: Newsru.com (http://newsru.com/cinema/16may2013/medinprotiv.html); ArtDaily (http://artdaily.com/index.asp?int_sec=2&int_new=62607#.UZmHRys_81w); Global Post (http://www.globalpost.com/dispatch/news/afp/130515/poland-seeks-return-art-seized-soviet-russia-1945).
Images: Wikimedia Commons, Wikipedia.

*For an overview of the Chabad dispute, read "Russia is no Congo: Chabad Decisions and Moscow Convictions (http://www.itsartlaw.com/2013/02/russia-is-no-congo-moscow-beliefs-and.html)."

Poland    restitution    Soviet Red Army    trophy art

Blog at WordPress.com. | The Adaption Theme.

# EXHIBIT D



**DISTRICT PROSECUTOR'S OFFICE IN POZNAŃ**

Poznań, June 11, 2013

File reference number III Oz 341/13

## REQUEST
### for provisional arrest and extradition

I kindly request provisional arrest and extradition of:

**Aleksander Choczyński son of Yakov**
[ Latin transcription Alexander Khochinskiy ]
born on: 18th February 1951, Leningrad, Russian Federation
recently domiciled in Moscow, Lichebnaya 5 /31
issued with passport document of series 4509 number 683880
Russian citizenship
currently staying in the territory of the United States of America

The evidence gathered in the case of file reference number V Ds. 85/12 conducted by the District Prosecutor's Office 5th Investigative Department in Poznań allowed for issue of a decision to charge Alexander Yakovlevich Khochinskiy as follows: before May 18, 2010 at an undisclosed location, knowing that a thing had been obtained by means of a prohibited act, he acquired a painting by Antoine Pesne – "Girl with a Dove" of 1754, cataloged in th Book of Acquisitions of the Greater Poland (Wielkopolskie) Museum in Poznań under the inventory number 60/1931, ad subsequently number 233 of the Kaiser Friedrich - Museum Posen, lost in 1943 as a result of looting of property by the then authorities of the III German Reich, found by the Red Army in 1945 and along with another collection of the museum moved to the repositories of the former Union of Soviet Socialist Republics, registered on sheet number 5983 of the database of goods of culture lost as a result of World War II of the Ministry of Culture and National Heritage and placed on the Interpol list in the Stolen Works of Art database under the reference 2010/50630-1.1, constituting good of particular importance to culture, and at the same time property of considerable value exceeding PLN 200 000 to the detriment of the Wielkopolskie Museum, currently the National Museum in Poznań, that is an offense under article 291 paragraph 1 of the Criminal Code in connection with article 294 paragraph 1 and 2 of the Criminal Code in connection with article 11 paragraph 2 of the Criminal Code.

The District Prosecutor's Office in Poznań, V Investigative Department is conducting under file reference number V Ds. 85/12 an investigation in the matter concerning possession by a citizen of the Russian Federation – Alexander Yakovlevich Khochinskiy - of a painting by Antoine Pesne "Girl with a Dove", lost during World War II as a result of looting of property by the then authorities of the III German Reich to the detriment of the Wielkopolskie Museum - currently the National Museum in Poznań, that is an offense under article 291

2