UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
:
:
:
IN THE MATTER OF THE                   :     15 MAG. 847 (JSR)
EXTRADITION OF ALEXANDER               :     15 CRIM. MISC. 1 (JSR)
KHOCHINSKY                             :
:
:
:
--------------------------------------------------------- x

# REPLY MEMORANDUM IN FURTHER SUPPORT OF
# RESPONDENT ALEXANDER KHOCHINSKIY'S MOTION TO DISMISS

**Christopher A. Flood, Esq.**
Federal Defenders of New York
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8734

**Clay H. Kaminsky, Esq.**
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6314

Attorneys for Respondent **Alexander Khochinskiy**

TO:   HONORABLE JUDGE JED S. RAKOFF
      United States District Judge
      500 Pearl Street
      New York, NY 10007

CC:   PREET BHARARA, ESQ.
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn: **Katherine Reilly, Esq.**
      Assistant United States Attorney

# TABLE OF AUTHORITIES

**PAGE(s)**

**CASES**

Banco Nacional de Cuba v. Sabbatino,
   376 U.S. 398 (1964) .................................................................................................. 6

Barry v. United States,
   229 U.S. 47 (1913) .................................................................................................... 5

Charlton v. Kelly,
   229 U.S. 47 (1913) .................................................................................................... 5

Collins v. Loisel,
   259 U.S. 309 (1922) .............................................................................................. 3, 5

Gill v. Imundi,
   747 F. Supp. 1028 (S.D.N.Y. 1990) ......................................................................... 4

In re Extradition of Ernst,
   No. 97 Crim. Misc. 1, 1998 WL 167324 (S.D.N.Y. Apr. 9, 1998) ........................... 4

In re Extradition of Rabelbauer,
   638 F. Supp. 1085 (S.D.N.Y. 1986) ..................................................................... 4, 5

Konowaloff v. Metro. Museum of Art,
   702 F.3d 140 (2d Cir. 2012) ..................................................................................... 6

Lo Duca v. United States,
   93 F.3d 1100 (2d Cir. 1996) ..................................................................................... 3

In re Pena-Bencosme,
   341 F. App'x 681 (2d Cir. 2009) ........................................................................... 4-5

Sacirbey v. Guccione,
   589 F.3d 52 (2d Cir. 2009) ................................................................................... 2, 3

United States v. An Antique Platter of Gold,
   991 F. Supp. 222 (S.D.N.Y. 1997), aff'd 184 F.3d 131 (2d Cir. 1999) .................... 4

United States v. Portrait of Wally,
   663 F. Supp. 2d 232 (S.D.N.Y. 2009) ...................................................................... 8

United States v. Santeramo,
   45 F.3d 622 (2d Cir. 1995) (per curiam) .................................................................. 2

## THE ACCUSATION AGAINST MR. KHOCHINSKIY

In an effort to shore up the infirmities in Poland's request, the government's opposition brief impermissibly advances theories that Poland itself has not submitted. Poland alleges that prior to May 18, 2010 Mr. Khochinskiy received the painting unlawfully, knowing it was unlawful for him to obtain it. This is the sole accusation that has been specified and transmitted by the Extradition Treaty between the United States of America and the Republic of Poland (July 10, 1996) (the "Treaty"). The court document setting forth this accusation is the "Decision," see Gov't Ex. A at Bates 97, but the accusation is incorporated and repeated throughout the accompanying materials.[1] The bulk of the remaining government exhibits represent investigative evidence of mutable and dubious value arrayed in support of that single claim. The government therefore makes a factual error when it asserts that Mr. Khochinskiy is "charged with carrying out any number of enumerated acts as to property 'gained through a prohibited act.'"[2] He isn't.

Such broadening is especially dangerous here where mere possession of stolen property is not probhited by the cited Polish law. See Gov't Ex. A at Bates 104 (Art. 291, ¶ 1). Concocting a theory of criminality for what the government describes as "negotiating the sale of the painting" ignores the necessity that compensation be paid to the holder of cultural property under Russian law, see Dobrovinskiy Decl. ¶¶ 2–3, as well as the fact that Polish officials themselves engaged in negotiations at the time. The government's novel theory of "concealment" – that the painting was not present in one place during one unannounced visit – is barely conceivable.

---

[1] See Gov't Ex. A at Bates 92 (Request for Provisional Arrest and Extradition) (referring to the "decision to charge Alexander Yakovlevich Khochinskiy as follows: before May 18, 2010 at an undisclosed location, knowing that a thing had been obtained by means of a prohibited act, he acquired a painting by Antoine Pesne – "Girl with a Dove" of 1754 . . ."); Gov't Ex. B at Bates 109 (Supplementary Information to a Request for Provisional Arrest and Extradition); Gov't Ex. D at 182 (Additional Information on the Request for Provisional Arrest and Extradition, Q. 6).

[2] Gov't Opp. at 11 (citing Polish statute); see also id. at 22 n.18 (relying on uncharged conduct).

1

The government's extemporizing also breaches the limitations of the Treaty, which does not contemplate joint investigations or prosecutions. Rather, it provides for extradition of "persons whom the authorities in the Requesting State seek for prosecution . . . of an extraditable offense." See Gov't Ex. F (Treaty) at Bates 39. In construing treaties, like statutes, courts must account for the "full text, language as well as punctuation, structure and subject matter. A basic canon of statutory interpretation, which is equally applicable to interpreting treaties, is to avoid readings that render statutory language surplusage or redundant." Sacirbey v. Guccione, 589 F.3d 52, 66 (2d Cir. 2009) (internal citations and quotation marks omitted). Yet, at minimum, double jeopardy rights articulated in Article 7 of the Treaty would be rendered practically meaningless if the government's liberal treatment of the Polish materials were to be permitted. Cf. United States v. Santeramo, 45 F.3d 622, 624 (2d Cir.1995) (per curiam) ("To comport with the Fifth and Sixth Amendments, a criminal indictment must (1) contain all of the elements of the offense so as to fairly inform the defendant of the charges against him, and (2) enable the defendant to plead double jeopardy in defense of future prosecutions for the same offense.").

This is not to say that the terms of the Treaty are lucid. Indeed, the Treaty is not particularly instructive as to how Poland can demonstrate that Mr. Khochinskiy has in fact been "charged" with an offense at all. See Sacirbey 589 F.3d at 68 n.20. The documentary record is not self-evident on this point, and upon close inspection reveals a curious ambiguity as to both the merits and the precise legal posture of the accusation against Mr. Khochinskiy.[3] Rather than a settled intention to prosecute, Poland evinces an ongoing investigation into the post-1943

---

[3] See Gov't Ex. A at Bates 92 (Request for Provisional Arrest and Extradition) ("The investigation in question has not been completed . . . ."); Gov't Ex. E at Bates 197 (Additional Information on the Request for Provisional Arrest and Extradition) ("[I]t is necessary . . . to interrogate him as a suspect . . . for comprehensive and full clarification of the case circumstances, and in consequence for making a final decision.")

2

provenance of the painting and Mr. Khochinskiy's claim to title. They would like to interrogate him. While certainly grounds for civil deposition, such exploits find no support in the text of the Treaty, and similarly inchoate prosecutorial escapades have been soundly and recently rejected by the Second Circuit. See id.

If Mr. Khochinskiy has in fact been "charged," it is certainly only with a single count of obtaining the painting unlawfully prior to May 18, 2010, knowing it was unlawful to do so. While the Polish statute may prohibit other conduct, it is outside the terms of the Treaty for the Requested State, in this instance United States, to amend or vary from the charging document or to create alternative paths to liability.

Clarity as to the charge is also a necessary precondition to the Court's task. There must be a judicial determination of extraditability as to each discrete offense charged, see Lo Duca v. United States, 93 F.3d 1100, 1112 (2d Cir. 1996), and the court will only certify extradition on those charges determined to be extraditable because, inter alia, both dual criminality and probable cause are present. Dual criminality, is met only if "the particular act charged is criminal in both jurisdictions." See Collins v. Loisel, 259 U.S. 309, 312 (1922); see Lo Duca, 93 F.3d at 1103-04. To read the "Decision" as the government invites would eliminate its textual limitation to conduct "before May 18, 2010" (Gov't Ex. A at Bates 97), ignore the fact that only a single count is stated, and violate the terms of Article 7 of the Treaty.

Poland's request hinges on the supposition that, because "Girl with Dove" was stolen by the Nazis in 1943, the Court should infer both that it remains stolen and that Mr. Khochinskiy knew it was stolen when he acquired it. As discussed below, these inferences are impossible as a matter of American, Russian, and Polish law.

## ARGUMENT

### A. Legal Standards

The government conflates the adjudication of Mr. Khochinskiy's motion to dismiss with the probable cause determination that the Court would have to make, following an extradition hearing, if it denies the pending motion.[4] Although the standard of review on a motion to dismiss an extradition complaint is not well established, it has been held that the most appropriate standard for resolving such motions is the civil summary judgment standard, under which courts grant judgment to the movant when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See In re Extradition of Ernst, No. 97 Crim. Misc. 1, 1998 WL 167324, at *1 n.4 (S.D.N.Y. Apr. 9, 1998); F. R. Civ. P. 56(a). While the Court may not resolve genuine factual disputes in deciding this motion, it may of course decide questions of law, including choice-of-law issues and the application of foreign law. See, e.g., United States v. An Antique Platter of Gold, 991 F. Supp. 222, 231 (S.D.N.Y. 1997), aff'd 184 F.3d 131 (2d Cir. 1999); see generally F. R. Crim. P. 26.1.

The government may not avoid the force of Mr. Khochinskiy's arguments for dismissal merely by labeling them "defenses." See Gov't Opp. at 9, 17, 20 n.16, 23 (citing In re Extradition of Rabelbauer, 638 F. Supp. 1085, 1089 (S.D.N.Y. 1986)). The respondent in extradition proceedings is plainly entitled to offer evidence and arguments bearing upon the issue of probable cause, and this entitlement extends to matters that are in the nature of a defense, even affirmative defenses like self-defense in a homicide case. See United States v. Pena-Bencosme,

---

[4] Mr. Khochinskiy notes his disagreement with the government's characterization of the standards governing extradition hearings. Contrary to the government's assertion, see Gov't Opp. at 10 & n.6, the Court is not required to uncritically accept all of Poland's statements and offers of proof; rather the credibility and weight to be accorded to Poland's proof are within the Court's discretion. See Gill v. Imundi, 747 F. Supp. 1028, 1041 (S.D.N.Y 1990).

4

341 F. App'x 681, 84 (2d Cir. 2009) (determining probable cause to believe respondent had not acted in self-defense, needed to make his conduct criminal under both U.S. and Dominican law).

Rabelbauer will not bear the weight the government places on it. In that highly fact-bound case, the court refused to consider the respondent's proffered defense of "Active Repentance," an Austrian legal procedure that bars prosecution when there has been a settlement between the alleged wrongdoer and the victim. See Rabelbauer, 638 F. Supp. at 1089.[5] The court justified its decision by citing the factual dispute about whether the settlement agreement had been repudiated and the fact that the procedure was within the peculiar expertise of the courts of Austria, the requesting State. Id. Here, as discussed below, there is no genuine factual dispute concerning the Soviet Union's seizure of "Girl with Dove" or Mr. Khochinskiy's later acquisition of the painting, and the Court is as competent as the Polish courts to apply the Act of State Doctrine and the Russian law of ownership.

## B.  The Act of State Doctrine Requires Dismissal

The facts material to the application of the Act of State Doctrine appear on the face of Poland's extradition papers and are not in genuine dispute. Poland alleges, and Mr. Khochinskiy does not dispute for the purpose of these proceedings, that the Third Reich removed "Girl with Dove" from Poland in 1943, taking it first to Kahlau, Germany, and then further into the territory of the Third Reich, where it was seized by the Red Army in 1945 and put in a repository of the Soviet Union. Gov't Opp. at 2–3; Gov't Ex. A at Bates 92, 93, 97; Gov't Ex. D at Bates 181.

---

[5] Rabelbauer cites Collins v. Loisel, 259 U.S. 309, 315–17 (1922) and Charlton v. Kelly, 229 U.S. 47, 461 (1913) in support of the dictum cited by the government. Charlton held that "the examining magistrate did not exceed his authority in excluding evidence of insanity." 229 U.S. at 462. A previous defense submission incorrectly indicated that Collins also addressed insanity; instead Collins addressed the distinction between explanatory and contradictory evidence and noted the respondent's ability to introduce evidence bearing on probable cause. See 259 U.S. at 315–16.

5

Mr. Khochinskiy submits that these facts establish a taking by the Soviet Union that represents an unreviewable act of state, precluding a finding of probable cause that the painting remained stolen thereafter. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 428 (1964) (holding that U.S. courts "will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles"); Konowaloff v. Metropolitan Museum of Art, 702 F.3d 140, 145, 147 (2d Cir. 2012) (applying Act of State Doctrine to Soviet takings notwithstanding that the Soviet Union was succeeded by the Russian Federation in 1991). The government argues that the doctrine does not apply because, it writes, "[t]here is no evidence in the record that this taking occurred in Soviet territory . . . nor that the intent or effect of the 'public act' of moving the painting was, . . ., to take ownership, including good title, on behalf of the Soviet Union." Gov't Opp. at 18 (citations omitted).

The government is simply wrong. Poland admits that the Red Army seized the painting in Soviet-occupied Germany in 1945. There can be no legal question that the Soviet Union exercised sovereignty through the Red Army over that territory at that time, because the United States recognized that sovereignty in international agreements. As the United States specifically agreed with the Soviet Union and the United Kingdom on November 14, 1944, in the Agreement on Control Machinery in Germany, and reconfirmed at the Potsdam Conference on August 1, 1945, "supreme authority in Germany is exercised, on instructions from their respective Governments, by the Commanders-in-Chief of the armed forces of the United States of America, the United Kingdom, the Union of Soviet Socialist Republics, and the French Republic, each in his own zone of occupation . . . ." Ex. R, Art. II.1 (Protocol of Proceedings of the Potsdam

6

Conference, Aug. 1, 1945); see Ex. S, Art. 1 (Agreement on Control Machinery in Germany, Nov. 14, 1944). The Red Army subsequently placed of the painting in a repository within the Soviet Union, which constitutes a second sovereign act in Soviet territory.

The United States recognized the nature of such Soviet takings in an international agreement, agreeing at the Potsdam Conference that "[r]eparation claims of the U.S.S.R. shall be met by removals from the zone of Germany occupied by the U.S.S.R. and from appropriate German external assets." Ex. R, Art. III.1 (Protocol of Proceedings of the Potsdam Conference, Berlin, 1 August 1945). As Professor Barkan explains, "[r]etribution against Germany was part of an official Russian policy to compensate the Soviet Union for [its] unprecedented destruction. The Red Army was ordered to strip Germany of everything that was valuable and could be moved." Ex. E at 66 (Elazar Barkan, The Guilt of Nations (JHU Press 2000).

The government also relies on Poland's proffer that certain other works of art that had been seized by the Red Army were returned to Poland after World War II, "suggesting that the Soviet government itself did not view the impact of its involvement in moving the paintings as transferring rightful ownership." Gov't Opp. at 19. The government's speculation is unfounded because it was agreed at Potsdam that "[t]he U.S.S.R. undertakes to settle the reparation claims of Poland from its own share of reparations." Ex. R, Art. III.2. In other words, the U.S.S.R. took objects from Germany as reparations and then gave a share of those objects to Poland. Cf. Ex. E at 84 (Barkan) (noting that the U.S.S.R. viewed restitution of art to East Germany as a gift, not an obligation). Russia's 1998 Cultural Property Law further demonstrates the Russian position that artwork seized from Germany by the Red Army constitutes war reparations.[6]

---

[6] The version of this law appended as Exhibit A to Mr. Khochinskiy's initial memorandum of law is not current. An amended version is appended hereto as Exhibit T.

### C.  Mr. Khochinskiy's Claim to Title Requires Dismissal

Poland fails to allege that Mr. Khochinskiy does not have good title to "Girl with Dove" under Russian law, even though his lack of ownership under the applicable local law is a necessary element for criminal liability under both U.S. and Polish law. See United States v. Portrait of Wally, 663 F. Supp. 2d 232, 262 (S.D.N.Y. 2009); Declaration of Natalia Ołowska-Czajka ("Ołowska Decl.") ¶¶ 4.2, 5.1. As Natalia Ołowska-Czajka explains in her declaration, Poland's domestic criminal law applies the requirement of dual criminality to alleged offenses committed outside of Poland, so Mr. Khochinskiy could not have committed a crime under Polish law unless he also committed a crime under Russian law. Ołowska Decl. ¶ 4. Poland's extradition documents "do not contain the necessary showing that Mr. Khochinskiy violated the laws of the Russian Federation." Id. ¶ 5.1.

This critical omission from Poland's extradition papers is no accident. Russian authorities investigated Mr. Khochinskiy's possession of the painting at Poland's request and determined that he had committed no crime under Russian law. See Ex. U (Notification dated February 21, 2012) (citing Article 24.1.1 of the Russian Code of Criminal Procedure); cf. Ex. V (Excerpts of Russian Criminal Procedure Code), Art. 24. The Russian court declined to issue a search warrant on this basis. Ex. W (Court Ruling, May 21, 2012); see Gov't Ex. A at Bates 94.

The undisputed facts establish that Mr. Khochinskiy does have title to the painting under Russian law. The only evidence in the record demonstrates that Mr. Khochinskiy inherited "Girl with Dove" in 1991 from his father Yakov Khochinskiy.[7] It is also undisputed that Yakov Khochinskiy possessed the painting for several decades before his death.[8] The painting hung

---

[7] See Resp. Mem. at 12 (citing evidence); see also Ex. X (Inheritance Certificate).

[8] See Resp. Mem. at 12; cf. Ex. Y (Marriage Certificate dated July 8, 1972). The declarations of Mr. Khochinskiy's relatives are being refiled with this reply to append missing passport pages.

8

openly on the wall of Yakov Khochinskiy's apartment in Leningrad, and, after his father's death, Mr. Khochinskiy openly displayed the painting to the public at the "Bohema" antique shop and even loaned it out to participate in exhibitions.[9] Under Russian law, these facts establish Mr. Khochinskiy's good title to the painting. See Dobrovinskiy Decl. ¶ 2.

The government claims that "[a]djudication of these claims requires the parsing of competing factual claims, as well as resolution of complex, disputed legal issues." Gov't Opp. at 22. But the government's only competing factual claim is that Mr. Khochinskiy's inheritance of the painting is "disputed by the statement of the gallery employee that he or she believed the painting to have been purchased at auction." Id. This asserted "dispute" is not genuine because not even Poland believes that Mr. Khochinskiy bought the painting at auction. See Gov't Ex. A at Bates 98 (Statement of Reasons) ("[H]is claims that he purchased it at a foreign auction are unlikely, for the painting is listed as lost in looting during World War II.").[10] Nor can Poland identify the source of this reported hearsay statement, see Gov't Ex. D at Bates 183, or offer any reason to believe that the unknown individual alleged to have made the statement had knowledge of how the painting had been acquired.[11] The claim that Mr. Khochinskiy may have obtained the painting at a foreign auction is also not material because such a purchase, if substantiated, would simply be another way to acquire the painting in good faith. Cf. Dobrovinskiy Decl. ¶ 2(d) (explaining the rights of a good-faith possessor of cultural property under Russian law).

---

[9] See Resp. Mem. at 12; see also Ex. Z (Consignment Agreement dated June 25, 2003); Ex. AA (2003 Exhibition Brochure); Ex. BB (2006 Exhibition Brochure); Ex. CC (2007 Exhibition Brochure); Ex. DD (full photograph from 2003 Exhibition Brochure).

[10] Indeed, such unattributed hearsay is not sufficient to establish probable cause under Polish law. See Ołowska Decl. ¶ 5.2.

[11] Cf. Ex. EE (Supplementary Information to the Request for Provisional Arrest and Extradition) at Bates 73 (recording that Yelizaveta Tairova, the general manager at Bohema when the Polish delegation visited, had been employed there only since December 14, 2009).

The government also argues that, "[e]ven accepting that Khochinskiy inherited the painting from his father, many factual issues remain to be resolved before Khochinskiy can assert what is, effectively, an innocent owner defense." Gov't Opp. at 23. But the government does not articulate what those issues are and why it believes Mr. Khochinskiy is asserting an innocent owner defense to civil forfeiture, when he is denying criminal liability. Because Mr. Khochinskiy inherited "Girl with Dove" from his father, he received it by operation of law, not by any voluntary act to which criminal liability could attach, and he owns it under Russian law.

The government does not seriously dispute Mr. Khochinskiy's choice-of-law analysis or the content of Russian law. See Gov't Opp. at 24. Russian law is clearly applicable to the ownership of this painting, which has spent more than five times longer in Russia than it hung in the National Museum in Poznan, and the only evidence before the Court demonstrates that Mr. Khochinskiy owns the painting under Russian law. Instead, the government argues that "[t]he Polish government should be permitted to argue as to choice of law and, if Russian law applies, to present a competing expert opinion as to how it applies," but that it should be required to do so in this extradition proceeding. Id. This argument must be rejected both because the Court is competent to decide issues of law antecedent to a probable cause determination and because Poland's own criminal code makes Mr. Khochinskiy's criminal liability turn on the application of Russian law. See Ołowska Decl. ¶¶ 3–4. Poland's failure to address this point is a reason to dismiss the extradition complaint, not to certify it.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the extradition complaint against Mr. Khochinskiy.

Dated: New York, New York
April 30, 2015

Respectfully submitted,

_____
**Christopher A. Flood, Esq.**
Federal Defenders of New York
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8734

_____
**Clay H. Kaminsky, Esq.**
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6314

Attorneys for Respondent **Alexander Khochinskiy**

11