# EXHIBIT T

International Journal of Cultural Property (2010) 17:413–426. Printed in the USA.
Copyright © 2010 International Cultural Property Society
doi:10.1017/S0940739110000160

## APPENDIX 1

# Federal Law on Cultural Valuables Displaced to the USSR as a Result of the Second World War and Located on the Territory of the Russian Federation

**Federal Law No. 64-FZ of 15 April 1998**
adopted by the State Duma on 5 February 1997;

approved by the Council of the Federation on 5 March 1997;
signed by President Boris Yeltsin on 15 April 1998.

*With the amendments of:*

**Federal Law No. 70-FZ of 25 May 2000 and**
**Federal Law No. 122-FZ of 22 August 2004, Article 155**

**Translated by Konstantin Akinsha\* and**
**Patricia Kennedy Grimsted\*\***

\*Contributing editor, *ARTnews*; co-author *Beautiful Loot: The Soviet Plunder of Europe's Art Treasures* (1995). E-mail: akinsha@fastmail.net.
\*\*Senior Research Associate, Ukrainian Research Institute, and Associate, Davis Center for Russian and Eurasian Studies, Harvard University; Honorary Fellow, International Institute of Social History, Amsterdam. E-mail: grimsted@fas.harvard.edu.

ACKNOWLEDGEMENTS: This translation was prepared for the Workshop at Harvard Law School February 2008 on the basis of the official Russian-language text of the original law as revised (25 May 2000 and 22 August 2004) as published in *Sobranie zakonodatel'stva Rossiiskoi Federatsii*, 2004, no. 35, st. 3607 (available electronically at ⟨http://www.lostart.ru/documents/detail.php?ID=862⟩; http://www.unesco.org/culture/natlaws/media/pdf/russianfederation/ru_cultproprtyussrworldwar two1998_rusorof.pdf; http://www.businesspravo.ru/Docum/DocumShow_DocumID_97174.html). See the full citations for the original Federal Laws, Constitutional Court decisions, and related legal acts (with printed and electronic versions and English translations of titles) listed in "Russian Legal Instruments Related to Cultural Valuables Displaced as a Result of the Second World War," compiled by Patricia Kennedy Grimsted in Appendix 2 of this issue.

# FEDERAL LAW ON CULTURAL VALUABLES DISPLACED TO THE USSR AS A RESULT OF THE SECOND WORLD WAR AND LOCATED ON THE TERRITORY OF THE RUSSIAN FEDERATION

## Federal Law No. 64-FZ of 15 April 1998

*adopted by the State Duma on 5 February 1997;*
*approved by the Council of the Federation on 5 March 1997;*
*signed by President Boris Yeltsin on 15 April 1998;*

**With the amendments of:**

**Federal Law No. 70-FZ of 25 May 2000 and**
**Federal Law No. 122-FZ of 22 August 2004**

The present Federal Law regulates relations governing cultural valuables displaced to the USSR as a result of the Second World War and located on the territory of the Russian Federation.

The fundamental goals of the present Federal Law are:

- to protect said valuables from plunder and prevent their illegal export beyond the borders of the Russian Federation as well as their unlawful transfer to whomsoever;
- to establish the necessary legal bases for bringing about the treatment of said cultural valuables as partial compensation for the damage caused to cultural property of the Russian Federation as a result of the plunder and destruction of its cultural valuables by Germany and its military allies during the Second World War;
- to protect the interests of the Russian Federation in the settlement of disputed issues with foreign States concerning said cultural valuables through consistent compliance with the principle of reciprocity;
- to provide the possibility for acquainting citizens of the Russian Federation and foreign citizens, including specialists in the fields of education, science, and culture, with said cultural valuables;
- to create favorable conditions for the continuous development of international cooperation in the fields of education, science, and culture.

## Chapter I. General Provisions

### Article 1. Legislation of the Russian Federation on Cultural Valuables Displaced to the USSR as a Result of the Second World War and Located on the Territory of the Russian Federation

Legislation of the Russian Federation on cultural valuables displaced to the USSR as a result of the Second World War and located on the territory of the Russian Federation shall consist of the present Federal Law and other legislative instruments promulgated in accordance with the Constitution of the Russian Federation and the present Federal Law.

### Article 2. International Legal and Other Instruments on Which the Present Federal Law Is Based

The present Federal Law is based on international legal and other instruments adopted during and following the Second World War, which remain in force with regard to the rules governing property under these instruments: the Peace Treaties of 1947, instruments adopted on the basis of the rights and supremacy of the occupation authorities in Germany in 1945–1949, the State Treaty on the Restoration of Independent and Democratic Austria of 15 May 1955, the Treaty of Final Settlement with Germany of 12 September 1990, and also provisions of Article 107 of the United Nations Charter and the United Nations Declaration of 5 January 1943.*

### Article 3. Applicability of the Present Federal Law regarding the Actual Possession of Cultural Valuables Displaced to the USSR as a Result of the Second World War and Located on the Territory of the Russian Federation

The present Federal Law shall be applicable to the displaced cultural valuables defined in Article 4 of the present Federal Law, irrespective of in whose possession they are actually held. *(*as revised 25.05.2000 No 70-FZ)*

### Article 4. Basic Concepts Used in the Present Federal Law

For the purpose of the present Federal Law, the following basic concepts are used:

> *Restitution*—A form of international legal material responsibility of a State that has committed an act of aggression or other international unlawful action, consisting in the responsibility of said State to eliminate or reduce the material damage inflicted on another State through the restoration of the *status quo ante, inter alia,* through the return of property plundered and illegally

---

*Translator's note*: The London Declaration of 5 January 1943, officially known as the "Inter-Allied Declaration against Acts of Dispossession Committed in Territories under Enemy Occupation or Control," was not a U.N. document, as it was issued before the formation of the United Nations.

removed by the first State from the territory of the other State occupied by
its troops;

*Compensatory restitution*—A form of international legal material responsibility
of an aggressor State, applied in cases when implementation of the respon-
sibility of said State in the form of regular restitution is impossible, consist-
ing of the responsibility to compensate for the material damage inflicted on
another State by handing over to the victim State objects of the same kind
(or by their removal by the affected State for its own benefit) as those that
were plundered and illegally removed by the aggressor State from the terri-
tory of the affected State;

*Cultural valuables*—Property of a religious or secular nature that is of histor-
ical, artistic, scientific, or any other cultural importance: works of art,
books, manuscripts, incunabula, archival materials, components and frag-
ments of architectural, historical, and artistic monuments, as well as those
of monumental art and other categories of objects specified in Article 7 of
the Law of the Russian Federation "On the Export and Import of Cultural
Valuables";

*Displaced cultural valuables*—Any cultural valuables removed in implementa-
tion of compensatory restitution from the territories of Germany and its for-
mer military allies—Bulgaria, Hungary, Italy, Romania, and Finland—to the
territory of the USSR, pursuant to orders of the Soviet Army military com-
mand, the Soviet Military Administration in Germany, or instructions of other
competent agencies of the USSR and that are located at the present time on
the territory of the Russian Federation;

*Former enemy States*—Germany and the States allied with it during the Second
World War—Bulgaria, Hungary, Italy, Romania, and Finland;

*Property of former enemy States*—Any property that is State-owned, private, mu-
nicipal, or owned by societal or other organizations and associations in for-
mer enemy States;

*Interested States*—Any States (with the exception of the Russian Federation and
the States specified in Article 7 of the present Federal Law) whose territory
was occupied in full or in part by the troops of former enemy States;

*Property of interested States*—any State-owned property, or property that is owned
by private, municipal, societal, or other organizations and associations in the
interested States;

*Cultural institutions*—Russian State-owned (including State agencies) and mu-
nicipal museums, archives, libraries, and other scientific, educational, enter-
tainment, and instructional institutions and organizations operating in the
fields of education, science, and culture.

## Article 5. Composition of Displaced Cultural Valuables

Displaced cultural valuables, from the standpoint of their former State of owner-
ship, shall include those cultural valuables that were the property of the former

Case 1:15-mj-00847-JSR   Document 22-2   Filed 04/30/15   Page 6 of 30

enemy States, in the meaning indicated in Article 4 of the present Federal Law. (*as revised 25.05.2000 No 70-FZ)

## Chapter II. Displaced Cultural Valuables and Rights of Ownership

### Article 6. On the Right of Ownership by the Russian Federation of Displaced Cultural Valuables

1. All displaced cultural valuables transferred to the USSR in realization of its right to compensatory restitution and located on the territory of the Russian Federation, with the exception of those specified in Articles 7 and 8 of the present Federal Law, belong to the Russian Federation and constitute federal property. (*as revised 25.05.2000 No 70-FZ)
2. The right of federal ownership shall not apply to such specific displaced cultural valuables as have legally passed into the ownership of individual Russian physical and juridical persons, Subjects of the Russian Federation, municipalities, or societal and other organizations and associations. (*as revised 25.05.2000 No 70-FZ)

### Article 7. On Guarantees of the Rights of Ownership of the Republic of Belarus, the Latvian Republic, the Lithuanian Republic, the Republic of Moldova, Ukraine, and the Estonian Republic to Displaced Cultural Valuables

1. The provisions of Article 6 of the present Federal Law do not affect the right of ownership of the Republic of Belarus, the Latvian Republic, the Lithuanian Republic, the Republic of Moldova, Ukraine, and the Estonian Republic to cultural objects that may be among the displaced cultural valuables, but that were plundered and removed during the Second World War by Germany and/or its military allies not from the territory of the Russian Soviet Federal Socialist Republic but from the territories of the Belorussian Soviet Socialist Republic, the Latvian Soviet Socialist Republic, the Lithuanian Soviet Socialist Republic, the Moldovan Soviet Socialist Republic, the Ukrainian Soviet Socialist Republic, or the Estonian Soviet Socialist Republic, and which constituted the national heritage of said union republics and not of the other union republics that comprised the USSR within its borders as of 1 February 1950.
2. Cultural objects specified in Section 1 of this Article may be handed over to the rightful ownership of the Republic of Belarus, the Latvian Republic, the Lithuanian Republic, the Republic of Moldova, Ukraine, and the Estonian Republic, subject to their compliance with the conditions of Article 18, Section 4, of the present Federal Law and subject also to their agreement to ensure the same approach, based on the principle of reciprocity, to cultural

valuables of the Russian Federation that were displaced to the USSR from former enemy States and are located on their territories.

## Article 8. Displaced Cultural Valuables Not Covered by Articles 6 and 7 of the Present Federal Law

Articles 6 and 7 of the present Federal Law shall not be applicable to the following displaced cultural valuables:

1. Cultural valuables of interested States forcibly confiscated and illegally removed from their territory by former enemy States; (*as revised 25.05.2000 No 70-FZ)
2. Cultural valuables that were the property of religious organizations or private charitable institutions and that were used exclusively for religious or charitable purposes and did not serve the interests of militarism and/or Nazism (or Fascism);
3. Cultural valuables that belonged to individuals who were deprived of these valuables because of their active struggle against Nazism (or Fascism), including their participation in national resistance against the occupation regimes of former enemy States and collaborationist regimes, and/or because of their race, religion, or national affiliation.

## Article 9. Conditions of Transfer of Cultural Valuables Covered by Article 8 of the Present Federal Law to Interested States

1. Cultural valuables for which the interested State files a claim for their return, and also presents evidence that these valuables are covered by the corresponding Section (Sections) of Article 8 of the present Federal Law, and officially confirms that it has not received any lump sum compensation for the loss of these valuables from Germany or any other former enemy State, are to be conveyed to the interested State in accordance with the terms and conditions specified in Article 18 of the present Federal Law. Such a claim for precisely defined cultural valuables (a precisely defined cultural valuable) may be submitted by the interested State any time after it becomes aware that those valuables (or this valuable) are (is) located on the territory of the Russian Federation, however no later than 18 months after the day of publication, by the federal executive agency authorized by the Government of the Russian Federation to execute State regulation in the field of protection of cultural valuables, of information about those valuables (or this valuable) in an information source designated by the Government of the Russian Federation. (*as revised 25.05.2000 No 70-FZ)

   Rights provided for in Paragraph 1 of Section 1 of this Article may be exercised by any interested State that offers to the Russian Federation, on the basis of the principle of reciprocity, no less favorable legal conditions for the return of that portion of the cultural valuables of the Russian Federation

plundered by former enemy States that is currently located, or may appear in the future, on the territory of the aforementioned interested State. (*as revised 25.05.2000 No 70-FZ)

2. Claims specified in Section 1 of this Article not made before the deadline specified in this Section will not be considered, which does not deprive individual physical and juridical persons of the interested State of the right to seek redress of their claims in legal proceedings within the period stipulated by laws of the Russian Federation. (*as revised 25.05.2000 No 70-FZ)

3. Displaced cultural valuables covered by Article 8 of this Federal Law, not claimed by an interested State in accordance with the procedure and conditions stipulated by this Federal Law, or by individual physical or juridical persons of the aforementioned State on the basis of a legal decision having entered into force, will be entered in a Special Collection (register) of cultural valuables designated for exchange for cultural valuables of the Russian Federation looted by former enemy States during the Second World War and located on the territory of the States that have not claimed their cultural valuables. Provisions about the Special Collection (registry) of cultural valuables specified in this Section shall be approved by the Government of the Russian Federation. (*as revised 25.05.2000 No 70-FZ)

### Article 10. Conditions of Transfer of Cultural Valuables Specified in Sections 2 and 3 of Article 8 of the Present Federal Law to Former Enemy States

1. Cultural valuables specified in Sections 2 and 3 of Article 8 of the present Federal Law for which a former enemy State files a claim for return and presents evidence that those valuables are covered by Section 2 and/or Section 3 of Article 8 of the present Federal Law may be conveyed to the claimant State, as rightful owner, in accordance with the terms and conditions specified in Article 18 of the present Federal Law. Such a claim regarding precisely defined cultural valuables (or a valuable) may be made by the former enemy State any time after it becomes aware that those valuables (or that valuable) are (is) on the territory of the Russian Federation, however not later than 18 months after the day of publication, by the federal executive agency that is authorized by the Government of the Russian Federation to execute State regulation in the field of protection of cultural valuables, of information about those valuables (or that valuable) in an information source designated by the Government of the Russian Federation. (*as revised 25.05.2000 No 70-FZ)

The rights provided by the first paragraph of Section 1 of this Article may be exercised by any of the former enemy States that takes special legislative measures to ensure implementation of its obligation to return, free of charge, to the Russian Federation its cultural valuables that were plundered

RUSSIAN CULTURAL PROPERTY LAW

and illegally removed by former enemy States and that currently are, or may be in the future, located on the territory of that former enemy State.

2. Claims specified in Section 1 of this Article not made before the deadline specified in this Section will not be considered, which is not to deprive physical and juridical persons of the former enemy State of the right to seek redress of their claims in legal proceedings within the period stipulated by laws of the Russian Federation. (*as revised 25.05.2000 No 70-FZ)

3. Displaced cultural valuables covered by Sections 2 and 3 of Article 8 of this Federal Law, not claimed by the former enemy State according to procedures and conditions stipulated by this Federal Law, or by physical and juridical persons of the aforementioned State on the basis of a legal decision having entered into force, shall become federal property, which is not to deprive persons specified in Section 3 of Article 8 of this Federal Law of the right to demand compensation for damages inflicted on them in accordance with existing laws of the former enemy State that inflicted the damage. (*as revised 25.05. 2000 No 70-FZ)

## Article 11. Displaced Cultural Valuables Not Subject to Transfer to Foreign States or International Organizations and (or) Export from the Russian Federation

Cultural valuables (archival and other materials, heirlooms, and other valuables) that by their content or nature may serve the purpose of resurrecting the spirit of militarism and/or Nazism (or Fascism) shall not be transferred to foreign States or international organizations and/or exported from the Russian Federation.

## Article 12. Displaced Cultural Valuables that Represent Family Heirlooms

1. Displaced cultural valuables that are family heirlooms (family archives, photographs, letters, decorations and awards, and portraits of family members or their ancestors) that have become federal property according to Article 6 of the present Federal Law, may for humanitarian reasons be handed over to authorized representatives of the families to which these valuables (heirlooms) formerly belonged, in accordance with the terms and conditions of Article 19 of the present Federal Law.

2. Application of Section 1 of this Article shall not extend to the family heirlooms of persons active in militarist and/or Nazi (or Fascist) regimes.

## Article 13. Rights of Cultural Institutions Regarding Displaced Cultural Valuables

1. Cultural institutions that under the Civil Code of the Russian Federation are endowed with the right of operative management of displaced cultural valuables that under Article 6 of the present Federal Law are federal property, shall exercise the rights of ownership, use, and disposal of said cultural valu-

ables consonant with the objective of their activities and the purpose of the valuables. However, alienation and/or transfer of these cultural valuables, except as provided by Section 2 of this Article, may be effected only on the basis of and in accordance with the terms and conditions provided in the present Federal Law. (*as revised 25.05.2000 No 70-FZ)

2. Duplicates of displaced cultural valuables that are under the operative management of cultural institutions (books, lithographs, and other printed publications) may be the object of cultural exchange with foreign institutions and organizations in cases where these duplicates are of no interest to other cultural institutions of the Russian Federation.

## Chapter III. International Cooperation Concerning Questions of Identification and Return of Cultural Valuables of the Russian Federation

### Article 14. Cultural Valuables Illegally Removed from the Territory of the Russian Federation Occupied by German Troops and German Military Allies during the Second World War

The Russian Federation will cooperate with the States that jointly with the USSR exercised supreme authority in Germany during its occupation—the United Kingdom of Great Britain and Northern Ireland, the United States of America, and the French Republic—with the aim of identifying and returning to ownership of the Russian Federation cultural valuables that might have been displaced to these States from their respective occupation zones of Germany.

The Russian Federation will also cooperate to the same ends with other States in which its cultural valuables may be located, and that have signed or acceded to the United Nations Declaration of 5 January 1943, by concluding appropriate international treaties as provided in Article 22 of the present Federal Law.

### Article 15. Conditions for Exchange of Displaced Cultural Valuables for Cultural Valuables of the Russian Federation Located beyond the Borders of the Russian Federation

The exchange of displaced cultural valuables for cultural valuables of the Russian Federation which are located beyond the borders of the Russian Federation, and for which the Russian Federation has not filed restitution claims, is permissible only in case of equivalent value of said valuables, as determined by a duly considered decision of an authorized federal executive agency in the sphere of culture, art, and cinematography. Such exchange shall be formalized through an international agreement with the Russian Federation taking into account the provisions of Chapter V of the present Federal Law. (*as revised 22.08.2004 No 122-FZ)

## Chapter IV. Procedure for Implementation of the Present Federal Law

### Article 16. Competent Federal Agency of Executive Power in the Sphere of Culture, Art, and Cinematography (*as revised 22.08.2004 No 122-FZ)

1. Authority for the preservation of displaced cultural valuables and preparation of decisions on questions relating to the right of ownership of those valuables shall be entrusted to a competent federal agency of executive power in the sphere of culture, art, and cinematography (*hereafter*, Federal Agency). (*as revised 22.08.2004 No 122-FZ)

2. The Federal Agency shall be assigned the following functions:
   - to oversee registration, and compile an electronic database of all displaced cultural valuables; publish information thereupon; and compile a register of cultural valuables designated for exchange as specified in Section 3 of Article 9 of this Federal Law; (*as revised 22.08.2004 No 122-FZ)
   - to consider claims of foreign countries and petitions of foreign citizens in accordance with Articles 18 and 19 of the present Federal Law and to prepare decisions on such claims, and make decisions on such petitions;
   - to distribute displaced cultural valuables among cultural institutions with the practical aim of using these valuables as compensation for damage incurred by these cultural institutions as a result of plunder and destruction of their property by troops of former enemy States;
   - to resolve disputed questions between cultural institutions concerning the distribution of displaced cultural valuables among them;
   - to determine the categories and storage conditions for displaced cultural valuables not subject to transfer to foreign countries or international organizations and/or export from the Russian Federation;
   - to issue permits to cultural institutions to exercise their right under Article 13 of the present Federal Law to use duplicates of displaced cultural valuables for cultural exchange with foreign institutions and organizations;
   - to exercise compliance authority with regard to such foreign trade regulations as pertain to displaced cultural valuables;
   - to present to the Government of the Russian Federation, jointly or in agreement with the Ministry of Foreign Affairs of the Russian Federation, proposals for conducting negotiations concerning displaced cultural valuables;
   - to monitor compliance with the present Federal Law.

3. The decisions adopted by the Federal Agency in accordance with its functions and authority as stipulated in this Article are binding. Decisions of the Federal Agency may be appealed in accordance with the laws of the Russian Federation. A decision that has not been appealed within the time period stipulated by laws of the Russian Federation is considered to have entered into force and may be amended by another decision of the Federal

Agency. The Government of the Russian Federation may revoke the decision of the Federal Agency or suspend its execution. (*as revised 25.05.2000 No 70-FZ)

4. An Interagency Council on Questions of Cultural Valuables Displaced as a Result of the Second World War will be created as a collegial advisory body. The head of the Federal Agency will be chair of the Interagency Council on Questions of Cultural Valuables Displaced as a Result of the Second World War.

## Article 17. Petitions and Claims of Cultural Institutions Concerning Displaced Cultural Valuables and Return of Their Property

A cultural institution may apply to the Federal Agency for the allocation to it of specific cultural valuables from among the displaced cultural valuables in compensation for the damage incurred by this institution as a result of the plunder and/or destruction of its property by the troops of former enemy States; it may also file claims disputing the allocation of such property. The procedure for consideration of these petitions and claims shall be determined by a regulation approved by the Government of the Russian Federation.

A cultural institution may also appeal to the Federal Agency for the return of cultural valuables formerly in its possession that, without justification, have been conveyed to another cultural institution.

## Article 18. Claims of Foreign States for Displaced Cultural Valuables

1. Claims regarding displaced cultural valuables covered in Sections 1, 2, and 3 of Article 8 of the present Federal Law can be made by the Government of the claimant State only to the Government of the Russian Federation; claims of physical and juridical persons, municipal agencies, and societal and other organizations and associations are not subject to consideration. A claim must be submitted to the Government of the Russian Federation by the Government of the claimant State in the state language of the Russian Federation. (*as revised 25.05.2000 No 70-FZ)

2. The transfer to a claimant State of a displaced cultural valuable of unique character, having especially important historical, artistic, scientific, or other cultural significance, shall be carried out on the basis of a Federal Law. A draft of the Federal Law on transfer of displaced cultural valuables shall be submitted to the State Duma of the Federal Assembly of the Russian Federation by the Government of the Russian Federation upon agreement with the agency of state power of the Subject of the Russian Federation on whose territory is located the regional cultural institution responsible for operative management of said cultural valuable. Criteria and procedures for designating displaced cultural valuables as cultural valuables of a unique character having especially important historical, artistic, scientific, or cultural value, or as cultural valuables having no such character and significance, shall be ap-

proved by the Government of the Russian Federation. The transfer to a claimant State of a displaced cultural valuable that has no unique character or especially important historical, artistic, scientific, or other cultural significance shall be carried out on the basis of a Decree issued by the Government of the Russian Federation upon agreement with the agency of state power of the Subject of the Russian Federation on whose territory is located the regional cultural institution responsible for operative management of said cultural valuable and also upon notification of the chambers of the Federal Assembly of the Russian Federation. The Decree of the Government of the Russian Federation shall take effect on the day of its official publication. (*as revised 25.05.2000 No 70-FZ)

3. Without adoption of the appropriate Federal Law or Decree of the Government of the Russian Federation, no displaced cultural valuable shall be the subject of an act of transfer, donation, exchange, or any other form of alienation for the benefit of any State, organization, or individual person. (*as revised 25.05.2000 No 70-FZ)

4. The transfer of a claimed displaced cultural valuable to the claimant State shall be subject to reimbursement by said State of the expenses for its identification, expert appraisal, storage, and restoration, as well as for its transfer (transportation costs, etc.).

5. Based on a Federal Law or a Decree of the Government of the Russian Federation on transfer of the displaced cultural valuable, the Federal Agency shall instruct the cultural institution responsible for operative management of the displaced cultural valuable that is the subject of the claim to conclude an agreement with the organization (institution or individual) authorized by the government of the claimant State on the basis of which the reimbursement of the expenses provided for in Section 4 of this Article and the actual transfer of the valuable (heirloom) shall be carried out. (*as revised 25.05.2000 No 70-FZ)

The original deed of transfer of displaced cultural valuables shall be registered and stored at the Federal Agency, and copies of the document shall be stored with the cultural institution and the interested parties.

## Article 19. Claims for Family Heirlooms

1. Petitions for displaced cultural valuables which are family heirlooms as defined in Article 12 of the present Federal Law may be filed with the Federal Agency by duly authorized representatives of families to whom the valuables (heirlooms) formerly belonged.

2. If a petition is recognized, the Federal Agency will issue a decision to transfer the family heirloom that is the object of the claim to the family to whom it formerly belonged, subject to payment of its value as well as reimbursement of the costs of its identification, expert appraisal, storage, restoration, and transfer (transportation etc.).

3. The cultural institution responsible for the operative management of the displaced cultural valuable being claimed shall conclude an agreement, on instruction of the Federal Agency, with the duly authorized representative of the family to whom the cultural valuable (heirloom) formerly belonged, in accordance with which the payment for its value and the reimbursement of the expenses covered in Section 2 of this Article as well as the actual transfer of the valuable (heirloom) shall be carried out.

The original deed of transfer of the cultural valuable (heirloom) shall be registered and stored at the Federal Agency and copies shall be stored at the cultural institution and by the interested parties.

## Article 20. Displaced Cultural Valuables Located in Cultural Institutions of Subjects of the Russian Federation or in Municipal Cultural Institutions

Prior to expiration of the period of acceptance for consideration of claims of foreign States for displaced cultural valuables, as stipulated in Articles 9 and 10 of the present Federal Law, those cultural valuables that are located in cultural institutions of Subjects of the Russian Federation or in municipal cultural institutions shall be considered as federal property in accordance with Article 6 of the present Federal Law. The redistribution of displaced cultural valuables among federal cultural institutions, cultural institutions of Subjects of the Russian Federation, or municipal cultural institutions is not permitted prior to expiration of the time period referred to above. (*as revised 25.05.2000 No 70-FZ)

## Article 21. Liability for Violation of the Present Federal Law

Individuals guilty of violations of the present Federal Law shall bear administrative, civil, and criminal liability in accordance with the laws of the Russian Federation.

## Chapter V. The Present Federal Law and International Treaties of the Russian Federation

### Article 22. International Treaties Concluded by the Russian Federation Pursuant to the Objectives of the Present Federal Law

The Russian Federation shall conclude treaties under international law that promote the achievement of the objectives of the present Federal Law, including international treaties:

- on the settlement of questions concerning the reimbursement of expenses of the Russian Federation and its cultural institutions for the preservation and restoration of displaced cultural valuables that were conveyed to foreign States through extracontractual procedures or in accordance with international treaties that contain no provisions for such reimbursement and that were concluded by the Government of the USSR or the Government of the Russian

Federation with governments of other States prior to the entry into force of the present Federal Law;

- on the equivalent exchange of displaced cultural valuables for cultural valuables of the Russian Federation located beyond the borders of the Russian Federation;
- on assistance to cultural institutions of the Russian Federation in carrying out cooperation with cultural institutions of other States to exchange displaced cultural valuables for cultural valuables that were lawfully removed from the territory of the Russian Federation at various times as well as to purchase such valuables;
- on governmental guarantees by the receiving State to ensure the preservation and inviolability of displaced cultural valuables while on display in art galleries, international exhibitions, or other expositions;
- on the return to the Russian Federation of its cultural valuables that were plundered and illegally removed from the territory of the USSR by occupation troops of former enemy States.

## Article 23. Ratification of International Treaties of the Russian Federation Concerning Cultural Property of the Russian Federation

International treaties of the Russian Federation concerning displaced cultural valuables, like any other international treaty of the Russian Federation concerning its cultural property, are subject to ratification.

## Chapter VI. Final Provisions

### Article 24. The Entry into Force of the Present Federal Law

The present Federal Law shall enter into force on the day of its official publication.

### Article 25. Harmonization of Normative Legal Instruments with the Present Federal Law

It shall be proposed to the President of the Russian Federation and entrused to the Government of the Russian Federation to harmonize their normative legal instruments in accordance with the present Federal Law.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# EXHIBIT U

To: The Head of the 5th department of KMU GCU GU of the Russian Ministry of the Interior for c.Moscow

Colonel of Justice
C.N. Zdobnov

Feb 21 2012   № 01/7-928

notification

This is to inform You that, pursuant to the examination request materials registered in the KUSP of the Arbat Department of the Russian Ministry of the Interior under the number 146 on 01.10.2012 upon filing a request from the competent authorities of r. Poland concerning the lawfulness of Mr. Khochinsky's possession of the painting "A girl with a dove" by Antoine Pesne, an examination has been conducted.

Based on the examination results, and in accordance with art.24 (p.1 p.1), art.144, art.145 and art.148 of the CPC RF the Criminal Procedure Code of the Russian Federation (reasons for refusing to open a criminal investigation or prosecution), it was decided to refuse to open a criminal investigation.

The decision can be appealed to the prosecutor or the court in the manner prescribed in art.124 (the prosecutor's grievance procedures), art.125 (the judicial grievance procedures) of the Criminal Procedure Code of the Russian Federation.

*Handwritten:* Attachment: A copy of the decision to refuse to open a criminal investigation on 2 sheets.

Chief of Police                              N. N. Furo

                                             Signed

                                             Seal

                                           , *Handwriting:* Copy is valid

                                             Signed

Exec. Samarskaya, M.V.
Tel: 499-241-24-67

I, Val Bochnev, residing at ███████████████, Brooklyn, NY ████, am fluent in both English and Russian, and I certify that I have accurately translated the attached document, NOTIFICATION, from Russian into English.

Date: 04/30/15



МВД России

ГУ МВД России по г. Москве
УВД по ЦАО ГУ МВД России
по г. Москве

**Отдел Министерства
внутренних дел по району
Арбат города Москвы**

119002, Москва, Кривоарбатский пер., д.14

№ 01 4 - 928

на № _____ от _____ 2012 г.

Начальнику 5 отдела КМУ ГУ ГУ
МВД России по г. Москве

полковнику юстиции
С.Н. Злобнову

**уведомление**

Сообщаю Вам, что по материалу проверки, зарегистрированном в КУСП Отдела МВД России по району Арбат г. Москвы за № 166 от 10.01.2012 года, по факту обращения компетентных органов р. Польши и правомерности владения картиной Антуана Песне «Девушка с голубем» Хочинским А.Я., проведена проверка.

По результатам проверки, по основаниям, п.1 ч.1 ст. 24, ст. 144, ст. 145 и ст. 148 УПК РФ Уголовно-процессуального кодекса Российской Федерации (основания отказа в возбуждении уголовного дела или уголовного преследования) вынесено постановление об отказе в возбуждении уголовного дела.

Решение может быть обжаловано в прокуратуру или в суд в порядке, предусмотренном ст. 124 (порядок рассмотрения жалобы прокурором), ст. 125 (судебный порядок рассмотрения жалоб) Уголовно-процессуального кодекса Российской Федерации.

Приложение: *[рукописный текст]*

Начальник полиции                                        Н.Н. Фур[...]

Исп. Самарская М.В.
Тел. 499-241-24-67

# EXHIBIT V

# CRIMINAL-PROCEDURAL CODE
## OF THE RUSSIAN FEDERATION
### NO. 174-FZ OF DECEMBER 18, 2001

**(with the Amendments and Additions of May 29, July 24, 25, October 31, 2002, June 30, July 4, 7, December 8, 2003, April 22, June 29, December 2, 28, 2004, June 1, 2005, January 9, March 3, June 3, July 3, 27, December 30, 2006, April 12, 26, June 5, 6, July 24, October 2, November 27, December 3, 6, 2007, March 4, June 11, December 2, 22, 25, 30, 2008, March 14, April 28, June 29, July 18, October 30, November 3, December 17, 27, 29, 2009, February 21, March 9, 29, April 7, 22, 30, May 5, 19, July 1, 22, 23, 27, November 29, December 28, 29, 2010, February 7, March 20, April 6, May 3, June 3, 14, July 11, 20, 21, November 6, 7, 21, December 6, 7, 2011, February 29, March 1, 2012)**

*This Code shall enter into force from July 1, 2002, with the exception of the **provisions**, for which other dates and procedure for putting into operation are established by **Federal Law** No. 177-FZ of December 18, 2001*

*The provisions of this Code (in the wording of **Federal Law** No. 420-FZ of December 7, 2011), as regards home arrest and deferral of punishment for convicted person suffering from drug addiction, **shall apply** starting from January 1, 2012*

**Passed by the State Duma on November 22, 2001**
**Approved by the Federation Council on December 5, 2001**

*Federal Law No. 177-FZ of December 18, 2001 on Putting into Operation the Criminal-Procedural Code of the Russian Federation*

## Part One. General Provisions

### Section I. Basic Provisions

#### Chapter 1. Criminal-Procedural Legislation

**Article 1.** Laws Defining the Procedure for Criminal Court Proceedings
**1.** The procedure for criminal court proceedings on the territory of the Russian Federation is established by the present Code, based on the **Constitution** of the Russian Federation.
**2.** The procedure for criminal court proceedings, established by this Code, is obligatory for courts, prosecutor's offices, preliminary investigation and inquiry bodies, as well as for other participants in the criminal court proceedings.
**3.** The generally recognized principles and norms of international law and international treaties of the Russian Federation make up a component part of the legislation of the Russian Federation regulating criminal legal proceedings. If an international treaty of the Russian Federation has laid down the rules different from those stipulated by the present Code, the rules of the international treaty shall be applied.

**Article 2.** Operation of the Criminal Procedural Law in Space

**4.** The demands, orders and inquiries of the prosecutor, of the head of an investigatory agency, of the investigator, of the body of inquiry or of the inquirer, presented within the scope of their powers established by the present Code, shall be obligatory for execution by all institutions, enterprises, organizations, officials and citizens.

**5.** After the commencement of a criminal case the prosecutor is entitled to conclude a pre-judicial cooperation arrangement with a suspect or accused.

**Article 22.** Victim's Right to Participate in the Criminal Prosecution

The victim, his **legal representative** and/or his representative shall have the right to take part in the criminal prosecution of the accused, and as concerns the criminal cases of the private prosecution - to put forward and to support the prosecution in accordance with the procedure established by the present Code.

**Article 23.** Involvement in the Criminal Prosecution upon Application of a Commercial or Other Organisation

If an act envisaged by **Chapter 23** of the Criminal Code of the Russian Federation has inflicted damage upon the interests of an exclusively commercial or of another kind of organisation that is not a state or a municipal enterprise, while not inflicting a damage upon the interests of other organisations or upon the interests of the citizens, of the society or of the state, the criminal case shall be instituted upon application from the head of the given organization or with his consent.

**Chapter 4. Grounds for Refusal of the Institution
of a Criminal Case and for Termination of
Criminal Case or Criminal Prosecution**

**Article 24.** Grounds for Refusal to Institute a Criminal Case or to Terminate a Criminal Case

**1.** A criminal case cannot be instituted, and or instituted criminal case shall be subject to termination on the following grounds:

1) absence of the event of a crime;

2) absence of the corpus delicti in the act;

3) expiry of the deadlines for criminal prosecution;

4) death of the suspect or of the accused, with the exception of cases when the proceedings on the criminal case are necessary for the rehabilitation of the deceased;

5) absence of the victim's application, if the criminal case may be instituted only upon his application, with the exception of cases envisaged by the **fourth part of Article 20** of the present Code;

6) lack of a court statement as to the availability of elements of crime in the actions of one of the persons mentioned in **Items 2 and 2.1 of Part 1 of Article 448** of the present Code or lack of the consent of the Federation Council, the State Duma, the Constitutional Court of the Russian Federation, the qualification college of judges respectively to the opening of a criminal case or prosecution as the accused of one of the persons mentioned in Items 1 and 3-5 of Part 1 of Article 448 of the present Code.

**2.** The criminal case shall be subject to termination on the ground, envisaged by Item 2 of the first part of this Article, if the criminality and punishability of the action in question have been eliminated by the new criminal law before the **sentence** came into legal force.

**3.** The termination of a criminal case shall entail simultaneous cessation of the criminal prosecution.

**4.** A criminal case shall be subject to termination in the event of terminating a criminal prosecution in respect of all suspects or accused persons, save for the instances provided for by **Item 1 of Part One of Article 27** of this Code.

**Article 25.** Termination of a Criminal Case in Connection with the Parties' Reconciliation

The court, as well as the investigator with the consent of the chief of an investigatory agency or the inquirer with the consent of the procurator, shall have the right to terminate the criminal case on the ground of an application filed by the victim or by his legal representative with respect to the person, suspected of or charged with committing a crime of minor or medium gravity, in the cases specified in **Article 76** of the Criminal Code of the Russian Federation, if this person has reconciled with the victim and has recompensed the damage he has inflicted upon the latter.

**Article 26.** Abolished

*See the **reference** on changes of Article 26 of the Criminal-Procedural Code of the Russian Federation*

**Article 27.** Grounds for Termination of the Criminal Prosecution

**1.** The criminal prosecution with respect to the suspect and to the accused shall be stopped on the following grounds:

1) non-involvement of the suspect and of the accused in the perpetration of the crime;

2) termination of the criminal case on the grounds envisaged by **Items 1-6 of the first part of Article 24** of the present Code;

3) as a result of an act of grace;

4) existence of the sentence on the same accusation or of the ruling of the court or the resolution of the judge on the termination of the criminal case on the same accusation, which has come into legal force, with respect to the suspect or to the accused;

5) existence with respect to the suspect and to the accused of an uncancelled resolution of the body of inquiry, of the investigator or of the prosecutor on the termination of the criminal case on the same accusation, or on the refusal to institute a criminal case;

6) refusal of the State Duma of the Federal Assembly of the Russian Federation to give its consent to the deprivation of immunity of the President of the Russian Federation, who has ceased the performance of his powers, and/or refusal of the Federation Council to deprive the given person of the immunity.

**2.** The termination of the criminal prosecution on the grounds, indicated in **Items 3 and 6 of the first part of Article 24**, in **Articles 25, 28 and 28.1** of the present Code, as well as in **Items 3, 6** of the first part of the present Article, shall be inadmissible, if the suspected or the accused objects to this. In this case, the proceedings on the criminal case shall be continued in the usual order.

**3.** The criminal prosecution with respect to a person who has not reached by the moment of committing the crime the age pointed out in the criminal law, from when the criminal liability sets in, shall be subject to termination shall be on the grounds, mentioned in **Item 2 of the first part of Article 24** of the present Code. On the same grounds subject to termination the criminal prosecution with respect to a minor who, even though he has reached the age from when criminal liability sets in, could not have fully realized the actual character and the social danger of his actions (of his lack of action) and direct them at the moment of committing the act,

respectively.

**2.** The petition shall be lodged with the inquirer, with the investigator or with the court.

**3.** The right to lodge a petition during the judicial proceedings is also enjoyed by the public prosecutor.

**Article 120.** Filing a Petition

**1.** A petition may be filed at any moment of the proceedings in a criminal case. A written petition shall be enclosed to the criminal case, and an oral one shall be entered into the protocol of the investigative action or court session.

**2.** Rejection of the petition shall not deprive the applicant of the right to file a petition again.

**Article 121.** Time Terms for Examining a Petition

A petition shall be subject to an examination and the resolution immediately after it is filed. If immediate decision-making on the petition, filed in the course of the preliminary inquisition, is impossible, it shall be resolved not later than three days from the day of being filed.

**Article 122.** Resolution of the Petition

On the satisfaction of the petition or on the complete or partial refusal to satisfy it, the inquirer, the investigator, the judge shall pass a resolution, and the court - a ruling, which shall be brought to the knowledge of the person, who has filed this petition. The decision on a petition may be appealed against in accordance with the procedure established by **Chapter 16** of the present Code.

## Chapter 16. Filing Appeals Against the Actions and Decisions of the Court and of the Officials, Conducting the Criminal Court Proceedings

**Article 123.** The Right to Appeal

**1.** Actions (omission to act) and decisions of the body of inquiry, the inquirer, the investigator, the head of an investigatory body, the public prosecutor and of the court may be appealed against in the procedure established by the present Code, by the participants in the criminal court proceedings, as well as by the other persons insofar as the performed procedural actions and the adopted procedural decisions infringe upon their interests.

**2.** In the event of failure to observe a reasonable time of criminal court proceedings in the course of pretrial proceedings in respect of a criminal case, participants in the criminal court proceedings, as well as other person whose interests are infringed upon, may file a complaint with a public prosecutor or the head of an investigatory agency which must be considered in the procedure and at the time which are fixed by **Article 124** of this Code.

**Article 124.** Procedure for the Consideration of a Complaint by the Public Prosecutor, by the Chief of an Investigatory Agency

**1.** The public prosecutor, the chief of an investigatory agency shall consider the complaint in the course of three days from the day of its receipt. In the exceptional cases, when it is necessary to demand that additional materials shall be supplied or other measures taken for

checking it, it shall be admissible to consider the complaint within a term of up to ten days, about which the applicant shall be duly informed.

**2.** On the results of the consideration of the complaint, the prosecutor, the chief of an investigatory agency shall pass a resolution on the complete or on a partial satisfaction of the complaint, or on the refusal to satisfy it.

**2.1.** In case of allowing a complaint filed in compliance with **Part Two of Article 123** of this Code, the resolution shall describe the procedural actions made for speeding up the cases' consideration and the time for making them.

**3.** The applicant shall be immediately notified about the decision, taken on the complaint, and about the further procedure for filing appeals against it.

**4.** In the cases provided for by this Code an inquirer and an investigator have the right to appeal against actions (omission to act) and decisions of a prosecutor or the chief of an investigatory agency accordingly to the superior prosecutor or the chief of a superior investigatory agency.

**Article 125.** Court Procedure for Considering Complaints

**1.** The decisions of the inquirer, the investigator, the head of an investigatory agency on the refusal to institute a criminal case or to terminate a criminal case, as well as other decisions and actions (omission to act) of an inquirer, investigator, of the head of an investigatory agency and prosecutor which can inflict damage upon the constitutional rights and freedoms of the participants in criminal court proceedings or can interfere with the citizens' access to administration of justice, may be appealed against with the district court at the place of conducting the preliminary investigation.

**2.** The complaint may be filed with the court by the applicant, by his counsel for the defence, by his legal representative or by his representative, either directly or through the inquirer, the investigator, the head of an investigatory body or the public prosecutor.

**3.** The judge shall check the legality and substantiation of the actions (the lack of action) and decisions of the inquirer, the investigator, the head of an investigatory body and the public prosecutor, not later than five days after the day of arrival of the complaint, at a court session with the participation of the applicant and of his counsel for the defence, of his legal representative or his representative, if they are taking part in the criminal case, as well as of the other persons, whose interests are directly infringed upon by the action (lack of action) or by the decision, against which the appeal is filed, as well as with the participation of the public prosecutor, the investigator, the head of an investigatory agency. The failure of the persons, duly informed about the time of considering the complaint and not insisting on its consideration with their participation, shall not be seen as an obstacle to the consideration of the complaint by the court. Complaints to be considered by the court shall be considered in a public hearing unless stipulated otherwise by the **second part of Article 241** of this Code.

**4.** At the start of the court session, the judge shall announce what complaint is subject to consideration, shall introduce himself to the persons, who have come to the court session, and shall explain their rights and liabilities. Then the applicant, if he is taking part in the court session, shall expose the ground for the complaint, after which the other persons in attendance at the court session shall be heard out. The applicant shall be granted the right to issue with a retort.

**5.** On the results of considering the complaint, the judge shall pass one of the following decisions:

1) on recognizing the action (lack of action) or the decision of the corresponding official to

be illegal or unsubstantiated, and on his liability to eliminate the committed violation;

2) on leaving the complaint without satisfaction.

**6.** Copies of the judge's resolution shall be directed to the applicant, to the public prosecutor and to the head of an investigatory body.

**7.** The filing of a complaint shall not suspend the performance of the action and the decision, appealed against, unless the body of inquiry, the inquirer, the investigator, the head of an investigatory body, the public prosecutor or the judge finds it necessary.

**Article 126.** Procedure for Lodging a Complaint of the Suspect or the Accused, Held in Custody

The administration of the place of holding in custody shall immediately direct to the public prosecutor or to the court the complaints of the suspect or of the accused, held in custody, which are addressed to them.

**Article 127.** Complaint and Presentation Against the Sentence, Ruling or Resolution of the Court

**Federal Law No. 433-FZ of December 29, 2010** amended part one of Article 127 of this Code. The amendments shall **enter into force** from January 1, 2013

**1.** The complaints and presentations against the sentences, rulings and the resolutions of the courts of the first and **appeals instances**, as well as the complaints and the presentations against the court decisions, taken in the course of the pre-trial proceedings on the criminal case, shall be filed in accordance with the order, established by **Chapters 43 - 45** of the present Code.

**Federal Law No. 433-FZ of December 29, 2010** amended part two of Article 127 of this Code. The amendments shall **enter into force** from January 1, 2013

**2.** The complaints and the presentations against the court decisions, which have come into the legal force, shall be filed in the order established by **Chapters 48** and **49** of the present Code.

### Section VI. Other Provisions

### Chapter 17. Procedural Terms. Procedural Outlays

**Article 128.** Computation of the Term

**1.** The time terms stipulated by the present Code, shall be counted in hours, days and months. When calculating the terms in months, time and day, from which the course of the time term begins, shall not be taken into account, with the exception of the cases stipulated by the present Code. When computing the terms of the detention in custody, of the home arrest and of being kept at a medical treatment or psychiatric stationary hospital, into them shall also be included the non-working time.

**2.** The term, calculated in days, shall expire midnight of the last day. The term, counted in months, shall expire on the corresponding day of the last month, and if this month does not have the corresponding day, the term shall be seen to end on the last day of this month. If the end of the term falls on a non-working day, seen as the last day of the term shall be the first working day next to it, with the exception of the cases when are computed the terms of holding in detention, under the home arrest or at a medical treatment or psychiatric stationary hospital.

**3.** In the case of detention, the term shall be calculated as from the moment of the actual

deciding the issue on initiation of a criminal case.

2. Seen as the ground for the institution of a criminal case shall be the existence of the sufficient data, pointing to the signs of a crime.

**Article 141.** Report on a Crime

**1.** A report on a crime may be made either verbal or in writing.

**2.** A written report on a crime shall be signed by the applicant.

**3.** A verbal report on a crime shall be entered into the protocol, which shall be signed by the applicant and by the person who has accepted the given report. The protocol shall contain the data on the applicant, as well as on the documents, identifying the person of the applicant.

**4.** If a verbal communication on the crime is made during the performance of an investigative action or in the course of the judicial proceedings, it shall be entered, respectively, into the protocol of the investigative action or into the protocol of the court session.

**5.** If the applicant cannot attend in person when the protocol is compiled, his report shall be formalized in accordance with the procedure, established by **Article 143** of the present Code.

**6.** The applicant shall be warned about the criminal liability for a deliberately false denunciation in conformity with **Article 306** of the Criminal Code of the Russian Federation, about which a note, certified with the applicant's signature, shall be made in the protocol.

**7.** An anonymous report on the crime cannot serve as a reason for the institution of a criminal case.

**Article 142.** Giving Oneself Up

**1.** Seen as an application on giving oneself up shall be the person's voluntary statement about the crime he has committed.

**2.** An application for giving himself up may be made both in writing and verbally. A verbal statement shall be accepted and entered into the protocol in accordance with the procedure established by the **third part of Article 141** of the present Code.

**Article 143.** Report on the Exposure of Signs of a Crime

A communication about the committed or prepared crime, received from the sources other than those pointed out in **Articles 141** and **142** of the present Code, shall be accepted by the person, who has received the given communication, about which he shall compile a report on the exposure of the signs of a crime.

**Article 144.** Procedure for Considering the Communication on a Crime

**1.** An inquirer, inquiry body, investigator, and the head of an investigative body must accept and check information about any crime committed or being prepared and shall, within the competence established by this Code, take a decision on it within three days from the day when such information is received. When checking certain information about a crime, an inquirer, inquiry body, investigator, the head of an investigative body may demand the conduct of documentary checks, audits, examinations of documents, objects, corpses and attract specialists to participation in such checks, audits and examinations, as well as to give instructions in writing on taking operative search measures to an inquiry body to be followed without fail.

**2.** The communication about a crime in the mass media shall be checked up on the public prosecutor's orders by the body of inquiry, as well as the investigator on the instructions of the chief of an investigatory agency. The editorial board and the editor in chief of the corresponding mass medium shall be obliged to hand over, on the demand of the public

prosecutor, of the investigator or of the body of inquiry, the documents and materials, confirming the communication on the crime, which are at the disposal of the given mass medium, as well as the data on the person who has supplied the said information, with the exception of the cases when this person has given an assurance that the source of information shall be kept secret.

**3.** Upon the justified petition of an investigator or inquirer, respectively, the head of the investigative body or the chief of the inquiry body may prolong for up to ten days the period established by **Part One** of this Article. If it is necessary to conduct documentary checks, audits or examinations of documents, objects or corpses, then the head of the investigative body upon a petition of the investigator and the prosecutor upon a petition of the inquirer may prolong this period for up to thirty days with an obligatory indication of the specific, factual circumstances which have served as the grounds for such extension.

**4.** The applicant shall be issued a document about accepting the communication on a crime with the information on the person who has accepted it and with an indication of the date and the hour of its acceptance.

**5.** Refusal to accept the communication on a crime may be appealed against with the public prosecutor or with the court in the procedure established by **Articles 124** and **125** of the present Code.

**6.** An application of a victim or his legal representative on criminal cases of private accusation submitted to a court shall be considered by a judge in accordance with **Article 318** of this Code. In the cases stipulated by Part four of **Article 147** of this Code, and the communication about the crime shall be verified in accordance with the rules established by this Article.

**Article 145.** Decisions Taken on the Results of Considering the Communication on a Crime

**1.** On the results of considering the communication on a crime, the body of inquiry, the inquirer, the investigator, the head of an investigatory agency shall take one of the following decisions:

1) on the institution of a criminal case in accordance with the procedure established by **Article 146** of the present Code;

2) on the refusal of the institution of a criminal case;

3) on handing over the communication in accordance with the jurisdiction in conformity with **Article 151** of the present Code, and as concerns criminal cases of the private prosecution - to the court, in conformity with the **second part of Article 20** of the present Code.

**2.** The applicant shall be informed about the adopted decision. He shall also be explained his right to appeal against the given decision and the procedure for filing an appeal.

**3.** In case of adoption of the decision stipulated by Item 3 of the first part of this Article, the body of inquiry, the inquirer, the investigator, the head of an investigatory agency shall take measures for the preservation of the signs of the crime.

## Chapter 20. Procedure for the Institution of a Criminal Case

**Article 146.** Institution of a Criminal Case of the Public Prosecution

**1.** If there exist the reasons and the grounds, stipulated by **Article 140** of the present Code, the body of inquiry, the inquirer, the head of an investigatory agency, the investigator within the scope of his competence established by the present Code, shall institute a criminal

case, about which the corresponding resolution shall be passed.

**2.** In the resolution on instituting a criminal case shall be pointed out:

1) the date, time and the place of passing it;

2) by whom it is passed;

3) the reason and the ground for the institution of a criminal case;

4) the Item, part and Article of the **Criminal Code** of the Russian Federation, on the ground of which the criminal case is instituted.

**3.** If the criminal case is forwarded to the public prosecutor for determining its jurisdiction, in the resolution on instituting the criminal case shall be made a corresponding note.

**4.** A copy of the decision of the head of an investigatory agency, of the investigator and of the inquirer on institution of a criminal case shall be immediately forwarded to the prosecutor. When criminal proceedings are initiated by captains of sea or river ships which are on a long voyage, by heads of geological prospecting teams or of wintering places located far from inquiry bodies, or by heads of diplomatic missions and consular offices of the Russian Federation, the prosecutor shall be immediately notified by the said persons of the start of the investigation. In this case, the decision on initiation of criminal proceedings shall be immediately passed over to the prosecutor as soon as there is a real opportunity to do so. Where the prosecutor finds the decision on initiation of criminal proceedings unlawful or ill-founded, he/she has the right within at most 24 hours of the time of receiving the materials serving as a basis for initiation of criminal proceedings to reverse the decision on initiation of criminal proceedings adopting a reasoned decision on it, whose copy shall be immediately forwarded to the official who has initiated criminal proceedings. The head of an investigatory body, the investigator or inquirer shall promptly notify the applicant, as well as the person in respect of which criminal proceedings have been initiated, of the adopted decision.

### Article 147. Institution of a Criminal Case of Private and Private-and-Public Accusation

**1.** Criminal cases on the crimes indicated in Part two of **Article 20** of this Code shall not be instituted otherwise than upon application of a victim or his legal representative:

1) with respect to a specific person - in the procedure established by **Parts One** and **Two of Article 318** of this Code;

2) with respect to a person indicated in **Article 447** of this Code - in the procedure established by **Article 448** of this Code.

**2.** If the application has been submitted with respect to a person the information about whom is not known by the victim, then the justice of the peace shall refuse to accept the application for his proceedings and shall send it to the the chief of an investigatory agency or the chief of an inquiry agency for deciding the issue of instituting a criminal case, about which he shall notify the person who has submitted the application.

**3.** The criminal cases on the crimes indicated in **Part Three of Article 20** of this Code shall not be instituted otherwise than upon application of a victim or his legal representative. The proceedings on such criminal cases shall be conducted in the general procedure.

**4.** The head of an investigatory agency, the investigator, as well as the inquirer with the consent of the prosecutor shall institute a criminal case on any crime indicated in **Parts Two and Three of Article 20** of this Code and in the absence of an application of the victim or his legal representative in the cases stipulated by **Part Four of Article 20** of this Code.

### Article 148. Refusal in the Institution of a Criminal Case

**1.** If there are no grounds for the institution of a criminal case, the head of an

investigatory agency, the investigator,, the body of inquiry or the inquirer shall pass a resolution on the refusal to institute a criminal case. The refusal in the institution of a criminal case on the ground, stipulated by **Item 2 of the first part of Article 24** of the present Code, shall be admissible only with respect to the concrete person.

**1.1.** The decision on the refusal to initiate a criminal case in connection with a prosecutor's reasoned decision on forwarding appropriate materials to a preliminary investigation body for deciding the issue of criminal prosecution in connection with the breaches of the criminal legislation detected by the prosecutor issued on the basis of **Item 2 of Part Two of Article 37** of this Code may be only adopted by approbation of the head of the investigatory body.

**2.** When passing the resolution on the refusal of the institution of a criminal case on the results of checking the communication about the crime, based on the suspicion of its perpetration by the concrete person or persons, the head of an investigatory agency, the investigator or the body of inquiry shall be obliged to consider the question about the institution of a criminal case for a deliberately false denunciation with respect to the person, who has reported or spread the false communication about the crime.

**3.** Information on the refusal to institute a criminal case by the results of checking the communication about the crime, spread by a mass medium, shall be subject to an obligatory publication.

**4.** A copy of the resolution on the refusal to institute a criminal case shall be directed to the applicant and to the public prosecutor within 24 hours from the moment of passing such. In this case, to the applicant shall be explained his right to appeal against the given resolution and the procedure for filing an appeal.

**5.** Refusal in the institution of a criminal case may be appealed against with the prosecutor, or the chief of an investigatory agency or with the court in conformity with the procedure, established by **Articles 124 and 125** of the present Code.

**6.** Having declared the decision on the refusal of the head of an inquiry agency or inquirer to initiate a criminal case as unlawful or ill-founded, a prosecutor shall reverse it and forward an appropriate decision to the head of the inquiry agency with his/her instructions fixing whereby the time for its execution. Having declared the decision of an investigatory body or an investigator on the refusal to initiate a criminal case as unlawful or ill-founded, a prosecutor at latest in 5 days as from time of receiving materials of verification of a report on a crime shall reverse the decision on the refusal to initiate the criminal case and shall issue the reasoned decision to the effect citing the specific circumstances to be additionally verified that shall be immediately sent jointly with the cited materials to the head of the investigatory body. Having declared the refusal of the head of an investigatory body or an investigator to initiate a criminal case as unlawful or ill-founded, the appropriate head of the investigatory body shall reverse it and initiate the criminal case or shall forward the materials for additional verification with the instructions thereof, fixing the time for their execution.

**7.** Having recognized the refusal in the institution of a criminal case as illegal or ungrounded, the judge shall pass the corresponding resolution, forward it for execution to the chief of an investigatory agency or to the chief of an inquiry body and notify to this effect the applicant.

**Article 149.** Directing a Criminal Case
After passing the resolution on the institution of a criminal case in the procedure established by **Article 146** of the present Code: